In re W. Stephen McCONNELL, Respondent, A Member of the Bar of the District of Columbia.

No. 84-1776.

District of Columbia Court of Appeals.
Submitted May 29, 1985.
Decided Dec. 18, 1985.

Thomas Lumbard, Washington, D.C., for respondent.

Samuel McClendon, Asst. Bar Counsel, Wallace E. Shipp, Jr., Deputy Bar Counsel, with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., were on the brief, for petitioner.

Before MACK and FERREN, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Upon a plea of guilty, respondent was convicted in the United States District Court for the Eastern District of Virginia of two felony counts of knowingly aiding and assisting his clients in submitting fraudulent and false federal tax returns in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2. By order dated November 18, 1982, entered pursuant to D.C. Bar R. XI, Sec. 15, this court suspended respondent from the practice of law and referred the matter to the Board on Professional Responsibility (the Board) to determine whether respondent's conviction constitutes a crime involving moral turpitude, which would necessitate mandatory disbarment under D.C.Code § 11-2503(a) (1981). *In re Colson*, 412 A.2d 1160 (D.C.1979) (en banc). The Board, after determining that the offense did not *per se* involve moral turpitude, asked a Hearing Committee to determine if the particular offense respondent was convicted of involved moral turpitude. The Board agreed with the Hearing Committee's finding that respondent had been convicted of an offense that involved moral turpitude and fell within § 11-2503(a) and recommended disbarment pursuant to that statute.[1]

■ We accept the findings of fact as supported by substantial evidence of

1. The Board also agreed with the Hearing Committee that respondent had violated DR 1-102(A)(3) which provides that an attorney shall not engage in illegal conduct involving moral turpitude and that for sanction purposes it was unnecessary to find a violation of DR 1-102(A)(4) which provides that an attorney shall not engage in conduct involving dishonesty,

record, D.C. Bar R. XI § 7(3), and we agree with the conclusion of law that the offense for which respondent was convicted involved moral turpitude. Further, D.C.Code § 11–2503(a) (1981) provides that upon conviction of an offense involving moral turpitude, an attorney shall be disbarred permanently by order of this court. We therefore adopt and incorporate the appended Report and Recommendation of the Board.

Accordingly, it is

ORDERED that respondent's name be struck permanently from the roll of members of the Bar of the District of Columbia, effective 30 days from the date of this order.

## APPENDIX

## REPORT AND RECOMMENDATION OF BOARD ON PROFESSIONAL RESPONSIBILITY

### Bar Docket No. 151–82

Respondent pled guilty to, and was convicted by, the United States District Court in Virginia of knowingly assisting his clients in submitting false and fraudulent income tax returns to the Internal Revenue Service in violation of 26 U.S.C. § 7206(2),[2] and 18 U.S.C. § 2.[3] The District of Columbia Court of Appeals suspended respondent from the practice of law in the District of Columbia on November 18, 1982, and referred the matter to the Board on Profes-

sional Responsibility to review the crime of which respondent was convicted and to determine whether it involved moral turpitude within the meaning of D.C.Code § 11–2503 (1981), which provides for mandatory disbarment upon conviction of an attorney of an offense which involves moral turpitude.

The Board on Professional Responsibility determined that the crime of which respondent had been convicted was not one of the narrow class of crimes which on their face involve moral turpitude, and on December 22, 1982, referred the matter to a hearing committee to determine whether the particular offense of which respondent had been convicted involved moral turpitude within the meaning of D.C.Code § 2503(a), as interpreted by the court in *In re Colson,* 412 A.2d 1160 (D.C.1979).

The matter came on for hearing before Hearing Committee Number 9, on March 20, 1984,[4] and based upon the evidence, including exhibits introduced into evidence, and respondent's testimony, the Hearing Committee found that the offense of which respondent was convicted did involve moral turpitude within the meaning of D.C.Code § 2503(a) and Disciplinary Rule 1–102(A)(3) and recommended that respondent be disbarred.

The Board adopts the Hearing Committee's findings which were based upon the following facts:

fraud, deceit, and misrepresentation. In view of the mandate of permanent disbarment contained in D.C. Code § 11–2503(a), consideration of these disciplinary violations is unnecessary.

**2.** 26 U.S.C. § 7206, entitled "Fraud and false statements," provides as follows:

Any person who ...
(2) *Aid or assistance.* Willfully aids or assists in, or procures, counsels, or advises the preparation of presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document ... shall be guilty of a

felony and, upon conviction thereof, shall be fined not more than $5,000 or imprisoned not more than three years, or both, together with the costs of prosecution.

**3.** 18 U.S.C. § 2, entitled "Principals," provides as follows:
(a) Whoever commits an offense against the United States, aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**4.** Because respondent was incarcerated at the time the court referred the matter to the Board, the hearing was deferred pending respondent's release.

Respondent's conviction, on a plea of guilty, grew out of a multiple-count indictment against twenty defendants. The gravamen of the indictment was a far-ranging conspiracy to violate federal narcotics laws. A number of the defendants were clients of respondent, and respondent was named in several counts involving the drug conspiracy. However, these counts were all dismissed as to respondent, and respondent's plea of guilty related only to two counts of assisting his clients, Julian Thomas Pernell and his wife, Susan Munley Pernell, in filing false and fraudulent federal income tax returns for the years 1977 and 1979. The indictment charges that respondent "willfully and knowingly" aided the Pernells in filing returns that were "false and fraudulent as to a material matter" and that respondent "well knew and believed" that the Pernells' income for the two years in question was "substantially in excess of the amounts reported" on the returns filed.

The plea of guilty was entered on August 25, 1982, pursuant to an agreement with the United States Attorney to drop the other charges against respondent. The agreement provided that respondent's cooperation with the continuing investigation by the Justice Department, and the United States Attorney later reported that respondent carried out the agreement.

At the hearing at which respondent pled guilty, the United States Attorney summarized the evidence that would have been offered against respondent at trial on the tax charges. It was as follows: the fraudulent returns were prepared in 1980 by an associate in respondent's office under respondent's direction. They were prepared pursuant to a format devised by respondent to show that all of the Pernells' income was from investments. The amounts of income shown on the return were approximately $74,000 for 1977 and $83,000 for 1979, with taxes owed shown as approximately $22,000 for 1977 and $32,000 for 1979.

In each of these years, the Pernells had delivered funds to respondent for deposit for their account, some or all of which was delivered in cash, that substantially exceeded the amounts reported on the tax returns. Their taxable income for each of the years exceeded $290,000. Respondent instructed his associate not to sign the Pernells' returns as preparer, and not to indicate in any way the firm's involvement with the returns. An Internal Revenue agent named Shaughnessy had advised respondent in 1978 that Julian Pernell had been convicted of drug offenses.

After the recitation, the court asked respondent if he disagreed with it. Apart from one or two details that are not relevant to this proceeding and which appear to have been cleared up in a colloquy between counsel, respondent answered that he did not disagree with the recital. The court then asked, "Is what she says happened what did happen?" Respondent replied, "Yes, Your Honor."

Respondent was then asked if he claimed he was innocent of the charges set forth in the two counts to which he was pleading. He responded, "No, Your Honor." He then entered a guilty plea.

Respondent was represented throughout his criminal proceeding by experienced and competent counsel, with whom he expressed complete satisfaction. Counsel advised the court that he had discussed the plea with respondent, that it accorded with his understanding of the facts and circumstances in the case, and that "in evaluating all the facts it was my conclusion too that he was, that the facts would convict him, if Your Honor please."

Respondent and his counsel adopted a somewhat different approach at the sentencing hearing held several weeks later on October 15, 1982. There, it was contended the respondent was not aware at the time the fraudulent returns were filed that Julian Pernell had been involved in drug dealing. It was asserted

that respondent's sole mistake was in simply accepting the information the Pernells supplied as to their taxable income without pursuing the matter with greater care. Respondent asserted that he "did not have a purposeful or evil intent in what happened." He did say that he should have realized that the Pernells were involved in illegal activity and should have ceased to assist them through his legal representation, but that until 1981 he deliberately overlooked the signs that should have alerted him to the Pernells' illegal activities. In particular, he stated, "I just ignored the amount of money that this particular fellow was bringing in. All I had to do was compare that with the amount of money that he was showing on his tax return, telling us to put on his tax return."

Respondent and his counsel also strongly disputed that there was any evidence linking respondent to the drug conspiracy involving the Pernells.

The United States Attorney cited information that she claimed indicated a fuller awareness by respondent of the Pernells' illegal activities at and before the preparation of the fraudulent returns, and suggested that he actively assisted the Pernells in utilizing the proceeds of the illegal drug activities.

The court did not find that respondent had been involved with the drug conspiracy, and subsequently took the unusual step of writing the Parole Commissioner to inform her so that consideration of respondent's parole would not be prejudiced by suggestions that he was so involved. Nevertheless, the court did find beyond doubt that respondent had knowingly violated the laws under which he was charged, and sentenced respondent to concurrent sentences of 18 months' confinement.

At the hearing before the Hearing Committee, Bar Counsel presented no witnesses but relied upon documentary evidence in the form of exhibits which consisted of: (1) the docket entries in the criminal case, (2) the indictment containing the counts to which respondent pled guilty, (3) the transcript of the plea hearing, (4) the transcript of the sentencing hearing, and (5) the formal Judgment and Conviction.

Respondent offered exhibits which consisted of: (1) a letter from the sentencing judge directing the Parole Commissioner not to consider the government's unproven allegations that respondent was involved in the marijuana-distribution conspiracy; and (2) a character reference letter from John W. Purdy, attesting to respondent's "high moral character." Respondent also testified extensively concerning his relationship with the Pernells, the circumstances surrounding the preparation of the tax returns in question and other business transactions that he had handled for the Pernells. Frank Tavenner, a former law partner of respondent, also testified on respondent's behalf.

Respondent testified that he first represented Julian Pernell in 1974 in a tax matter growing out of receipts of income from bookmaking, and that at the time he prepared the 1977, 1978 and 1979 income tax returns for the Pernells he thought that their income came primarily from the produce business and possibly from gambling. Respondent admitted the receipt of large amounts of cash from the Pernells but stated that was reflective of the practice of produce dealers to do business on a cash basis.

Respondent also admitted that he directed his associate not to sign the Pernells' 1977 and 1979 tax returns or to do anything that would connect the firm with the preparation of the tax returns because, according to respondent, the Pernells had provided no records to substantiate the income figures they furnished to respondent.

Respondent denied knowing of the Pernells' drug dealing activities and specifically denied that he was informed by the Internal Revenue Service Agent, Shaughnessy, that Julian Pernell had been convicted of drug offenses.

Respondent testified that his plea of guilty was based essentially on his fear of being convicted on the other counts relating to the drug-dealing conspiracy if he were forced to go to trial with the nineteen other defendants named in the indictment, many of whom were strangers to him, as well as the cost of the trial and his concern that the government would keep after him if he were acquitted.

Respondent admitted that he willfully and knowingly aided and assisted in the preparation of the two fraudulent tax returns in question and that the recitation of the facts by the United States Attorney at the plea hearing was correct in substance, if not in precise detail.

Respondent also testified that he was an experienced tax lawyer with a Masters degree in tax law from Georgetown University; that prior to going into private practice, he had spent four years with the Tax Division of the Department of Justice; and that during his years of private practice, he has been principally a tax lawyer.

The matter came before the Board for argument on September 13, 1984. Respondent argued that the offense to which he pled guilty did not involve moral turpitude because he pled guilty of the "lowest common denominator of the offense" and because his conduct in the preparation of the tax returns in question was not fraudulent within the meaning of the United States Code because the charge was directed to the source of his clients' funds which he misstated on the tax returns and not to the amount.

Respondent further urged the Board that Bar Counsel had not met his burden of proof on the record in the proceeding before the Hearing Committee because Bar Counsel has relied only on the documentary evidence in the form of exhibits and had presented no witnesses to substantiate the charge of fraudulent conduct. Respondent argued further that the record of the proceedings at which respondent entered his guilty pleas, as well as the sentencing, were factually flawed because the record contained factual misrepresentations by the prosecutor which were not admissible evidence because they were not "stipulated facts in the plead proceeding."

It also was respondent's position before the Board that the petition should be dismissed because his conduct was not such as to require his disbarment under D.C. Code § 11–2503 and that his conduct violated Disciplinary Rule 1–102(A)(4) only in a technical sense because what he did involved neither dishonesty nor moral turpitude. Respondent contended that the only false and fraudulent information that he had been charged with was stating that the source of his clients' income was "investments." According to respondent's theory, the government charged that the statement was false and fraudulent because respondent knew that his clients had some income from other sources.

Respondent equated his conduct with that of the respondent in *In re Kent*, 467 A.2d 982 (D.C.1983) (per curiam) where the court held that although respondent's conduct involved "dishonesty" within the meaning of DR 1–102(A)(4), it was not intentional.

Bar Counsel argued to the Board that, based upon respondent's own testimony and his plea of guilty to the indictment which charged him with willfully and knowingly assisting in the preparation of fraudulent income tax returns for the purpose of defrauding the United States Government out of tax dollars to which it was entitled, respondent's conduct involved moral turpitude and that he should be disbarred, based upon the decisions by the District of Columbia Court of Appeals in *In re Price*, No. M–119–82 (D.C. Nov. 3, 1982), and *In re Downes*, No. M–108–82 (D.C. Sept. 8, 1982).

The Board agrees with, and adopts, the findings and recommendation of the Hearing Committee that the offense of which respondent was convicted did involve moral turpitude within the meaning of D.C.Code § 11–2503(a) and that respondent should therefore be disbarred.

## DISCUSSION

■ A Final Judgment by a judicial tribunal in another proceeding convicting an attorney of a crime is conclusive proof that the attorney did the underlying acts which constitute the crime. *In re Colson,* 412 A.2d 1160, 1167 (D.C.1979) (en banc) (citations omitted).

The two counts in the indictment which respondent pled guilty charged that respondent:

[D]id unlawfully, wilfully and knowingly aid and assist in, and counsel, procure, and advise the preparation and presentation to the Internal Revenue Service, of a 1977 U.S. Individual Income Tax Return, Form 1040, of Julian Thomas Pernell (A/K/A "Doc") and Susan Munley Pernell which was false and fraudulent as to a material matter, in that it represented that the said Pernells had income of $78,-244.00 and had income taxes due and owing thereon in the amount of $22,-593.00, whereas, the defendant McConnell then and there well knew and believed, the Pernells' taxable income for 1977 and the *amount of income taxes due and owing to the United States of America was substantially in excess of the amounts reported on the same returns.* [Emphasis added.]

Both counts are identical in wording except for the years, the amount of income represented, and the amount of taxes due and owing to the United States of America. Nowhere in either of the two counts to which respondent pled guilty is there any wording or language that speaks of the "source of income" of respondent's clients as to the bases of the charges. The essential elements of the crime of which respondent was charged were "knowingly" and "willfully" preparing a false and fraudulent income tax return for the purpose of defrauding the United States Government out of taxes to which it was entitled. Thus, respondent's argument that at the time he plead guilty he thought it was because he had helped his clients to misrepresent the source of their income is without merit.

At the hearing on the plea, respondent, under oath, in answer to the court's inquiry, testified that before coming to court he had received a copy of the indictment, that he had gone over all of the counts that affected him, that he understood the nature of the counts of the charges that had been brought against him, and that he understood that he was charged in counts 37 and 38 for a violation of 26 U.S.C. § 7206(2), and 18 U.S.C. § 2.

Not only was respondent aware of the contents of the indictment prior to entering his guilty plea, but in response to the judge's inquiry whether respondent disagreed with the recital of the prosecutor, with the exception of the modifications raised by respondent's counsel, respondent responded, "No." The court, pressing home the point, further asked respondent, "Is what she says happened what did happen?" Respondent replied, "Yes, Your Honor." [5] Respondent also testified before the Hearing Committee that the prosecutor's representations to the court were accurate in substance, if not in precise detail.

■ A valid guilty plea acts as both a conviction of the offense charged and as an admission of all material facts alleged by the government. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). "[I]t is well settled that an attorney cannot collaterally attack a conviction in a subsequent disbarment proceeding, and the record of the conviction is taken as conclusive proof that the attorney did the underlying acts which constitute the crime." *In re Colson, supra,* at 412 A.2d at 1167 (citations omitted).

## SANCTION

The Hearing Committee found, and the Board agrees, that the offense of which

---

5. The modification to which the court referred dealt with whether the money which the Pernells delivered to respondent's firm was in cash, whether it was personally delivered to respondent, and whether the amounts recited by the prosecutor were exact amounts.

respondent was convicted violated both D.C.Code § 11–2503(a) and DR 1–102(A)(3) because he engaged in an illegal act involving moral turpitude [6] and that it is, therefore, not necessary to find a violation of DR 1–102(A)(4) also.[7] Respondent disagrees with these findings and argues that his conduct did not involve moral turpitude because what he did was a mere technical violation of the law. He argues that the crime of which he was convicted satisfies one part of DR 1–102(A)(3) in that it was an illegal act, but he contends that the conviction alone does not connote moral turpitude because DR 1–102(A)(3) requires both, that is, that the act should have been performed for a bad purpose. *In re Kent, supra,* 467 A.2d at 982.

Respondent's reliance upon *Kent* is misplaced. In that case, respondent, who had a history of personal and emotional problems which led her to seek psychiatric treatment, was arrested on a charge of petit larceny but later pled guilty to taking property without right. *Id.* at 984. The court found that "respondent's actions were prompted by a neurotic desire to be caught rather than a desire for personal profit" and suspended her for thirty days.

The Hearing Committee also found that respondent's knowing participation in efforts to defraud the United States Government was done for personal gain in the form of substantial client fees. Respondent takes issue with this finding of the Hearing Committee and contends that the Hearing Committee failed "to recognize that the personal gain requirement in the cases seems to refer to ill-gotten, or illegal gains; it is not the size, but the nature of the 'gain' that counts." The Board knows of no case or authority in which "personal gain" has been defined in the manner suggested by respondent, nor has he cited to the Board any authority for his definition.

Respondent attaches great significance to the fact that the sentencing judge "took the trouble to write to the Parole Commissioner to make it clear that [the judge] had found no proof of respondent's involvement with the drug ring...." Respondent is grasping at straws. The letter itself adds nothing to respondent's argument because at the Hearing on Plea, the court had specifically pointed out that respondent's plea had nothing to do with the drug conspiracy, that he did not plead guilty to the conspiracy, and that any information about the drug conspiracy was not relevant to respondent's plea. It goes without saying that whether respondent was involved in the drug conspiracy likewise would not be relevant to, and has not been considered in, these disciplinary proceedings.

The Board believes that respondent's conduct is analogous to that of the respondents in *Price, supra,* and *Downes, supra.* In *Price,* respondent pled guilty and was convicted in Minnesota of one felony count of knowingly filing three false statements for the refund of a portion of property tax allocation to renters, a violation of Minnesota Statute § 290.53, subd. 4 (1978). At a disciplinary hearing, the Hearing Committee found that respondent had pled guilty to a crime that involved moral turpitude as set forth in D.C. Code § 11–2503(a) and Disciplinary Rule 1–102(A)(3) and recommended disbarment. The Board adopted the findings and recommendation of the Hearing Committee, and the District of Columbia Court of Appeals affirmed.

In *Downes,* respondent was found to have been convicted of a crime involving moral turpitude because of his conviction on three counts of violating 26 U.S.C. § 7206(1) for subscribing to a false income tax return. The finding of moral turpitude and the recommendation of disbarment by the Board was affirmed by the District of Columbia Court of Appeals.

---

6. DR 1–102(A)(3) provides that an attorney should not engage in illegal conduct involving moral turpitude.

7. DR 1–102(A)(4) provides that an attorney shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

Although respondent's conviction was based upon knowingly and willfully assisting his clients in understating their income, while the conviction of *Price* and *Downes* were based upon falsifying their own tax returns, the Board agrees with the Hearing Committee that there is no major distinction between the offenses because the respondents' intent in each case was to defraud the government of taxes to which it was entitled.

There was more than ample evidence from which respondent could have concluded that his clients were understating their income. The uncontradicted representation by the prosecutor at the Hearing on Plea was that during the year 1977 the Pernells had deposited with respondents' law firm a total of $96,000 and during 1979, they deposited with respondent approximately $400,000. Respondent's only disagreement with those representations was that the monies were not all delivered in cash.

Despite that evidence, respondent, nevertheless, instructed his young associate to prepare the tax returns with the figures furnished by the Pernells which were $67,000 for 1977 and $83,000 for 1979. Respondent also went to great lengths to disassociate himself and his firm from the preparation of the income tax returns by instructing the associate not to sign the returns, not to use the firm's stamp machine to mail the returns, and not to indicate in any way his firm's involvement with the preparation of the returns. Respondent's actions thus lend credence to the judge's remarks when he imposed concurrent 18 month sentences on respondent. The judge stated:

> And there is no doubt in my mind that the circumstances involved in what you did had to be known to you, none of us who practice law are so naive that we aren't basically aware of what goes on around us.

Respondent's own admission at the Sentencing Hearing substantiates that respondent should have been aware of the fact that his clients were understating their income, because as he stated:

> I just ignored the amount of money that this particular fellow was bringing in. And all I had to do was compare that with the amount of money that he was showing on his tax return telling us to put on his tax return....

There is no doubt that respondent pled guilty to a crime which involves moral turpitude, and respondent's attempt now to collaterally attack his plea on the ground that he thought he was pleading guilty to something else must be rejected.

If, as the court has held in *Price* and *Downes, supra,* a conviction of falsely subscribing to tax returns is an offense involving moral turpitude, it goes without saying that conviction of an offense of willfully and knowingly assisting in the preparing and filing of a false and fraudulent tax return is likewise an offense involving moral turpitude. An attorney guilty of such an offense must be disbarred permanently pursuant to D.C. Code § 11–2503(a). *See In re Kerr,* 424 A.2d 94 (D.C.1980) (en banc).

It is, therefore, the recommendation of the Board that respondent be permanently disbarred pursuant to the statute.

THE BOARD ON PROFESSIONAL RESPONSIBILITY

By s/s _____
Florence R. King

Dated: November 28, 1984.

All members of the Board concur in this opinion except Ms. Rosenberg, who did not participate.