**In re Leonard L. CASALINO, Respondent,**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**Nos. 93–BG–368, 93–BG–1309.**

District of Columbia Court of Appeals.

Argued Feb. 14, 1996.

Decided June 12, 1997.

Melvin G. Bergman, Beltsville, MD, for respondent.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for petitioner, the Office of Bar Counsel.

Before TERRY and FARRELL, Associate Judges, and BELSON, Senior Judge.

TERRY, Associate Judge:

Respondent, an attorney admitted to practice in Maryland and the District of Columbia, pleaded guilty on February 12, 1993, to an information charging him with tax evasion, in violation of 26 U.S.C. § 7201 (1988).[1] On May 18, 1993, the United States District Court for the District of Maryland sentenced him to two years' probation, with 160 hours of community service. The court also or-

---

1. The information alleged, in part, that respondent "did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar years 1988, 1989, and 1990, by preparing and causing to be prepared, and by signing and causing to be signed, false and fraudulent U.S. Individual Income Tax Returns...." According to the information, "his taxable income for the said calendar years was substantially in excess" of what he had reported on his tax returns, so that "a substantial additional tax was due and owing to the United States of America."

dered him to make restitution to the Internal Revenue Service in the amount of $20,000.

Bar Counsel formally notified this court of the plea shortly after it was entered, and on April 16, 1993, this court suspended respondent from the practice of law in the District of Columbia pending the completion of reciprocal disciplinary proceedings. In its April 16 order, the court referred respondent's case to the Board on Professional Responsibility ("the Board") to determine whether his conviction involved moral turpitude. The Board ruled that the offense of which respondent was convicted did not involve moral turpitude *per se* and directed a hearing committee to determine whether the facts surrounding the conviction established moral turpitude. While the case was pending before the hearing committee, disciplinary proceedings in Maryland went forward. A hearing was held before a judge of the Circuit Court in Prince George's County, and in July 1994 respondent was disbarred in Maryland. *Attorney Grievance Commission v. Casalino*, 335 Md. 446, 644 A.2d 43 (1994).

■ Finding that respondent's criminal conviction did not involve moral turpitude on its facts, the hearing committee recommended that he be suspended from the practice of law for one year. The Board, however, concluded that there was moral turpitude and recommended that respondent be disbarred in the District of Columbia under D.C.Code § 11–2503(a) (1995).[2] The case is now before us on the Board's recommendation and respondent's exceptions.

The underlying facts are not in dispute. Respondent maintained his law practice in Maryland as a sole practitioner. His only employee was his wife, who served as his secretary. During 1988, 1989, and 1990, whenever a client paid him in cash, he would give the cash to his wife instead of depositing it in his office account. None of this money, which averaged $250 to $300 per week, was reported as income on his federal tax re-

turns, and no tax was paid on it. Over the three-year period respondent and his wife used this money to buy—all with cash—two automobiles and a piece of real property, the latter for $75,000. An investigation by the Internal Revenue Service eventually led to the filing of the criminal information to which respondent pleaded guilty. Although the exact amount of the tax loss was not established, it was stipulated for sentencing purposes that it was somewhere between $20,000 and $40,000.[3]

■ Maryland case law holds that willful tax evasion calls for automatic disbarment unless the respondent attorney makes a "compelling" showing of extenuating circumstances. Because respondent failed to make such a showing, the Maryland Court of Appeals held that "disbarment [was] the appropriate sanction." *Attorney Grievance Commission v. Casalino, supra*, 335 Md. at 453, 644 A.2d at 46. Respondent argues here that he should not also be disbarred in the District of Columbia. He invokes D.C. Bar Rule XI, § 11(c)(4), which permits this court in a reciprocal proceeding to impose a different sanction if the attorney shows, by clear and convincing evidence, that his misconduct "warrants substantially different discipline in the District of Columbia...." To obtain such "different discipline" in this case, however, respondent must establish that the crime of which he was convicted is not a crime of moral turpitude. See note 2, *supra*. In an effort to do so, he relies primarily on two cases involving attorneys who were also convicted of federal tax violations, *In re Shorter*, 570 A.2d 760 (D.C.1990), and *In re Kerr*, 611 A.2d 551 (D.C.1992). We find both *Shorter* and *Kerr* distinguishable in material respects from this case, and thus of no help to respondent.

The attorney in *Shorter* was convicted in federal court of one count of willful tax evasion, a felony under 26 U.S.C. § 7201, and six

---

2. Unlike "ordinary" disbarment, disbarment under section 11–2503(a) is mandatory when an attorney has been "convicted of an offense involving moral turpitude"; the court has no discretion to impose a lesser sanction, such as suspension. *See In re Rosenbleet*, 592 A.2d 1036, 1037 n. 3 (D.C.1991).

3. At the sentencing hearing, the prosecutor said it was "roughly $30,000." Respondent agreed to file amended tax returns for the years at issue.

counts of willful failure to pay taxes, a misdemeanor under 26 U.S.C. § 7203. In his ensuing disciplinary case, this court held, first of all, that neither offense was a crime of moral turpitude *per se*. Turning to the specific facts of the criminal case, the court noted that the indictment charged the attorney with three affirmative acts of tax evasion: (1) concealing his assets from the IRS, (2) making false statements to IRS agents, and (3) "placing his funds beyond the service of process." *Shorter*, 570 A.2d at 766. Because the jury had to find only a single evasive act in order to find him guilty, the court ruled that it could sanction him only "to the extent required by those actions which would be minimally necessary to sustain the underlying convictions." *Id.* at 766–767 (footnote omitted). Such "minimally necessary" conduct, *i.e.*, the least act that would support a conviction, was item (3). After examining the relevant case law[4] and determining that it generally requires a showing of fraud, deceit, or dishonesty, the court concluded that Mr. Shorter's conduct did not meet the definition of moral turpitude:

> Because we do not know whether the jury predicated his conviction of tax evasion on any affirmative act more duplicitous than "placing his funds beyond the service of process," and because we cannot establish that he actually took steps to conceal information or made false statements, we cannot say that he practiced deception.

*Id.* at 767 (citations omitted). Consequently, the court said, "[w]e ... cannot say that respondent's particular actions in violating 26 U.S.C. §§ 7201 and 7203 involved moral turpitude." *Id.*

The undisputed facts in this case, by contrast, establish that respondent and his wife engaged in a systematic and deceptive scheme to deprive the government of tax revenue to which it was entitled. He did not just place his funds beyond the service of process, like the attorney in *Shorter*; instead, as the Board found, "on a weekly basis ... he secretly stashed away cash received as legal fees"—taxable income—by withholding those payments from his office bank account, thereby concealing them from the IRS. Even though the individual amounts were small, over a three-year period they added up to enough money to enable respondent and his wife to buy a $75,000 parcel of land as well as two cars. The Board found that respondent had "clearly engaged in the practice of deception," and we have no difficulty in sustaining that finding.[5] The presence of such deception in this case takes it well beyond *Shorter*.

As for *In re Kerr*, it presented a strictly legal issue: whether the crime proscribed by 26 U.S.C. § 7206(1), filing a false tax return "willfully ... under the penalties of perjury," involved moral turpitude as a matter of law. It was agreed by all parties that "the particular facts of Mr. Kerr's filing of a false tax return [did] not establish moral turpitude." *Kerr*, 611 A.2d at 553 n. 3. The only issue before the court was whether the elements of the crime, as set forth in the statute, constituted perjury (as Bar Counsel argued) or merely tax evasion similar to that in *Shorter* (as the Board maintained). We held that although the statute makes reference to perjury, it is not itself a perjury statute. Since Mr. Kerr was not charged with or convicted of perjury, we declined to "treat the crime with which he was charged as the equivalent of perjury." *Id.* at 555 (citation omitted). We therefore agreed with the Board that Mr. Kerr's crime was tax evasion and that his case was governed by *Shorter*:

> We conclude, primarily on the basis of *In re Shorter*, that the offense proscribed by 26 U.S.C. § 7206(1) does not involve moral turpitude *per se*, and that Mr. Kerr is therefore not required to be disbarred under D.C.Code § 11–2503(a).

*Id.* at 556. Because there was no issue as to whether the facts underlying Mr. Kerr's conviction involved moral turpitude, *Kerr* is inapposite here.

Although the definition of moral turpitude

---

**4.** *E.g., In re Colson*, 412 A.2d 1160, 1167–1168 (D.C.1979) (en banc).

**5.** As the Board noted in a footnote in its report, respondent's counsel "freely conceded [before the Board] that his client had practiced deception."

is not always as precise as one might wish,[6] our case law over the years has established a few basic principles, one of which is relevant here:

> As the term is applied in our disciplinary cases, moral turpitude has been held to include acts of intentional dishonesty for personal gain.

*In re Sneed,* 673 A.2d 591, 594 (D.C.1996) (citations omitted); *accord, In re Shorter,* 570 A.2d at 765 ("the concept has commonly been found to involve intentional dishonesty for personal gain"). This case plainly fits within that aspect of moral turpitude. That respondent intentionally engaged in dishonest conduct is essentially conceded (see note 5, *supra*), and even if it were not, there is ample evidence in the record to support the Board's finding of dishonesty. That he acted for personal gain is shown by his purchase of two cars and a parcel of land with the money that he secretly stashed away and hid from the IRS. On these facts the only reasonable conclusion we can reach is that his crime involved moral turpitude.[7] *See In re McConnell,* 502 A.2d 454, 459–461 (D.C.1985) (conviction of aiding and abetting others in the filing of false and fraudulent tax returns; hearing committee "found that respondent's knowing participation in efforts to defraud the United States Government was done for personal gain," *id.* at 460).

Respondent also relies on D.C. Bar Rule XI, § 11(c)(3), which allows the court, in a reciprocal discipline case, to impose a different sanction from that originally imposed elsewhere if the imposition of the same discipline "would result in grave injustice. . . ." Given our holding that respondent's conviction was for a crime of moral turpitude, we are bound by D.C.Code § 11–2503(a), which makes disbarment mandatory and allows no room for lesser sanctions. See note 2, *supra.* Thus we are foreclosed from even considering the "grave injustice" exception. *See In re Sneed, supra,* 673 A.2d at 595.

It is therefore ORDERED that respondent, Leonard L. Casalino, is hereby disbarred from the practice of law in the District of Columbia, effective April 16, 1993, the date of his interim suspension in this case, *nunc pro tunc.*[8]

---

6. *See In re Colson, supra* note 4, 412 A.2d at 1167.

7. Although our decision here, as in many cases, is based on particular facts, our determination that those facts establish moral turpitude is a conclusion of law. *See In re Shillaire,* 549 A.2d 336, 343 (D.C.1988).

8. We note that respondent has filed the requisite affidavit certifying that he has not practiced law or had any clients in the District of Columbia since the date of his suspension.