**In re Thuryo A. SNEED, Respondent,**

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 92–BG–1390.

District of Columbia Court of Appeals.

Argued Dec. 13, 1994.
Decided Feb. 29, 1996.

Alan S. Novins, with whom Lee Ellen Helfrich, Washington, D.C., was on the brief, for respondent.

Michael S. Frisch, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, Washington, D.C., for the Office of Bar Counsel.

Before TERRY and RUIZ, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

The Board on Professional Responsibility ("the Board") has recommended that respondent, a member of our bar, be disbarred under D.C.Code § 11–2503(a) (1995) on the ground that he was convicted of a crime involving moral turpitude. Respondent, noting that he was convicted of only a misdemeanor, argues that his crime was not one of moral turpitude, and that the standard for disbarment under D.C.Code § 11–2503(a) is unconstitutionally vague. We find no merit in these arguments, and therefore we adopt the recommendation of the Board.

I

Respondent, Thuryo Sneed, was admitted to the District of Columbia Bar in February 1981.[1] At the time of his disciplinary violation, Sneed lived in Texas and was employed by Trailways Lines, Inc., as a vice president for industrial relations. Before joining Trailways, he had been employed as an attorney by the United States Department of Labor.

In the latter part of 1985, Sneed received a series of telephone calls from John S. Truesdell, Jr., a friend and former colleague at the Department of Labor. Truesdell, who was still working for the Department, first called Sneed to ask for his help in obtaining legal services for his daughter, who had been arrested on a criminal charge. When Sneed told Truesdell that he could not help him because he did not practice criminal defense law, Truesdell suggested that Sneed take part in a scheme to obtain funds illegally from the Department of Labor by the use of overtime pay vouchers made out in the name of a non-existent private contractor. Truesdell said that he needed these funds to pay for his daughter's legal defense and offered to share whatever he received with Sneed.

Sneed refused to let Truesdell use his name as that of the payee, but after several more telephone calls, Sneed finally agreed to enlist the aid of a friend who would pose as the non-existent contractor. Truesdell and Sneed's friend then went ahead with the fraudulent scheme, eventually receiving more than $15,000 from the Department of Labor. Sneed's share of this money amounted to $3,812.70, approximately one-fourth of the total. In testifying before the hearing committee, Sneed asserted that his motivation in participating in this scheme was to help his friend, not to receive any monetary gain. He also said he was surprised by the large amount of money that he eventually received

1. He is also a member of the bars of Texas, New York, and Wisconsin.

as his share.[2] Sneed admitted, however, that at the time he engaged in the scheme with Truesdell, he knew that his conduct was illegal.

In October 1987 Sneed pleaded guilty before the United States District Court for the Southern District of New York to a one-count information charging a misdemeanor violation of 18 U.S.C. § 641 ("unlawfully, willfully, and knowingly" aiding and abetting the conversion, to the use of another, of a record, voucher, or thing of value of a department or agency of the United States, "to wit, [a] United States Treasury check"). He was later sentenced to pay a fine of $3,812.70, plus a $25 "special assessment," and ordered to perform 200 hours of community service. This sentence was apparently designed to minimize the impact on Sneed's ability to practice law in Texas. Sometime after the sentencing, however, Sneed's counsel discovered that because Sneed had not received a sentence of probation, Texas disciplinary rules would require his disbarment. Consequently, in December 1989 Sneed's sentence was amended to place him on unsupervised probation for a short period.

In the meantime, this court ordered Sneed suspended from the practice of law pursuant to D.C.Bar Rule XI, § 10(c), which requires the suspension, pending further disciplinary action, of an attorney who has been convicted of a "serious crime."[3] *See In re Hutchinson,* 474 A.2d 842 (D.C.1984). The court then directed the Board to determine whether Sneed's conviction involved moral turpitude within the meaning of D.C.Code § 11–2503(a).

The Board in due course filed its report with the court recommending that Sneed be disbarred because the offense of which he was convicted, even though it was only a misdemeanor, was a crime of moral turpitude. Thereafter, while Sneed's case was pending, this court decided the case of *In re*

*McBride,* 602 A.2d 626 (D.C.1992) (en banc), in which it held that a misdemeanor cannot be regarded as a crime involving moral turpitude *per se.* As a result, we remanded Sneed's case to the Board for a determination whether his crime involved moral turpitude on its particular facts. A hearing on this issue was held before a hearing committee, which then filed a report with the Board concluding that the facts of Sneed's case established moral turpitude. The Board agreed with the hearing committee and recommended that Sneed be disbarred pursuant to section 11–2503(a).

**II**

When reviewing a recommended disciplinary sanction against an attorney, this court must accept the Board's findings of fact if they are supported by substantial evidence. D.C.Bar Rule XI, § 9(g)(1); *see, e.g., In re Smith,* 403 A.2d 296, 303 (D.C.1979). However, "[w]e review *de novo* any Board determination of moral turpitude, since 'the ultimate issue of moral turpitude is one of law rather than of fact.'" *In re Kerr,* 611 A.2d 551, 553 (D.C.1992) (quoting *In re Shillaire,* 549 A.2d 336, 343 (D.C.1988)). Although this court usually adopts the Board's recommended sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted," D.C.Bar Rule XI, § 9(g)(1); *see, e.g., In re Steele,* 630 A.2d 196, 199 (D.C.1993); *In re Hutchinson,* 534 A.2d 919, 924 (D.C.1987) (en banc), that rule is subject to a caveat in cases presenting issues of moral turpitude. Because the question of whether a particular crime involves moral turpitude is a legal one, and disbarment is statutorily mandated if an attorney is convicted of such a crime, this court is guided (and, we assume, so is the Board) by sanctions imposed in other cases with similar

---

2. The record reveals that Sneed's involvement in this endeavor was only a small part of a larger scheme by Truesdell to defraud the United States government. It also appears, however, that Sneed was unaware of this larger scheme and that his participation was limited to the events we have described.

3. "Serious crime" is defined as including:

(1) any felony, and (2) any other crime a necessary element of which ... involves improper conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud ... deceit ... misappropriation [or] theft....

D.C.Bar Rule XI, § 10(b).

facts so as to further the policy expressed in Rule XI, § 9(g)(1).

Before this court, Sneed contends that the conduct on which his 1987 conviction was based does not support the hearing committee's (and hence the Board's) finding of moral turpitude so as to require his disbarment under D.C.Code § 11–2503(a). Specifically, he argues (1) that his conduct does not fit within this court's prior interpretations of moral turpitude; (2) that the report of the hearing committee, which described his case as "close," reflects the committee's difficulty in concluding that his acts merited disbarment; and (3) that disciplinary authorities in the other states to whose bars he belongs have imposed only a suspension, and that we should do likewise. After reviewing the record and the relevant case law, we find these arguments meritless.

 D.C.Code § 11–2503(a) provides that when a member of our bar has been "convicted of an offense involving moral turpitude," that attorney must be disbarred. *See In re Rosenbleet,* 592 A.2d 1036, 1037 n. 3 (D.C.1991) (describing difference between disbarment under section 11–2503(a) and "ordinary" disbarment). Once moral turpitude is established, the statute leaves the court no discretion to impose a lesser sanction. *See In re Colson,* 412 A.2d 1160, 1168 (D.C.1979) (en banc). The harshness of this rule was softened just a bit when this court held in *In re McBride, supra,* 602 A.2d at 632, that a conviction of a misdemeanor—unlike a felony—cannot be deemed to include a finding of moral turpitude *per se.* Thus, for the purpose of determining a proper disciplinary sanction, an attorney who has been convicted of a misdemeanor is entitled to a hearing on whether that crime, on its particular facts, involved moral turpitude. *Id.* at 635.

 Recognizing that moral turpitude "has less than a finite definition," *In re Colson, supra,* 412 A.2d at 1167, this court has nevertheless accepted three overlapping, but essentially consistent, definitions of conduct involving moral turpitude. Slightly paraphrased from *Colson,* 412 A.2d at 1168, these three definitions are as follows:

(1) conduct which offends the generally accepted moral code of mankind; (2) an act of baseness, vileness, or depravity in the private and social duties which everyone owes to one's fellow human beings or to society in general, contrary to the accepted and customary rule of right and duty between one person and another; and (3) conduct contrary to justice, honesty, modesty, or good morals.

As the term is applied in our disciplinary cases, moral turpitude has been held to include acts of intentional dishonesty for personal gain. *In re Untalan,* 619 A.2d 978, 979 (D.C.1993); *In re Shorter,* 570 A.2d 760, 765 (D.C.1990); *In re Kent,* 467 A.2d 982, 984 (D.C.1983). Additionally, this court has consistently held that crimes involving theft or fraud are crimes involving moral turpitude. *E.g., In re Boyd,* 593 A.2d 183 (D.C.1991); *In re Bond,* 519 A.2d 165 (D.C.1986). Since *McBride,* however, if the crime at issue is a misdemeanor, we must look beyond its statutory definition to the underlying facts; "we cannot find moral turpitude merely by reference to the elements of [the criminal statute]." *McBride, supra,* 602 A.2d at 635.

 In the present case, the acts which led to Sneed's misdemeanor conviction warrant a finding of moral turpitude. At Truesdell's bidding, Sneed enlisted a friend to pose as a non-existent contractor billing the Department of Labor for overtime pay on a non-existent job. As a result of those actions, the Department was defrauded of more than $15,000, of which Sneed received a one-fourth share amounting to $3,812.70. From these facts, which are essentially undisputed, the hearing committee found that Sneed had actively participated in a scheme involving intentional dishonesty for personal gain. That is enough to support the committee's and the Board's conclusion that his acts involved moral turpitude, a conclusion fully consistent with this court's prior interpretation of that term in similar cases. *E.g., In re Untalan, supra,* 619 A.2d at 978 (attorney convicted of misdemeanor offense of facilitating a second-degree felony, theft by deception, when he engaged in fraudulent conduct while negotiating the sale of a country club); *In re Meisnere,* 471 A.2d 269 (D.C.1984)

(attorney convicted of perjury and conspiracy to defraud the Internal Revenue Service).

In support of his argument that his conduct did not involve moral turpitude, Sneed relies on this court's opinion in *In re Shorter, supra*, 570 A.2d at 765–766 (conviction of tax evasion and willful failure to pay taxes held not to involve moral turpitude). He maintains that his conduct, like that of Shorter, although illegal, was not sufficiently "depraved" or contrary to "the generally accepted moral code" to warrant a finding of moral turpitude. In the same vein, he cites two other cases: *In re McBride, supra*, in which an attorney obtained a passport by deceptive means in order to facilitate the naturalization proceedings of an alien client, and *In re Kent, supra*, in which an attorney suffering from a mental disorder shoplifted merchandise from a department store. Sneed's reliance on these cases is misplaced. Although the attorney in each case engaged in dishonest acts, none did so for personal monetary gain; hence we held that there was no basis for a finding of moral turpitude. *See Shorter*, 570 A.2d at 765 n. 10 (differentiating between common law fraud or theft, which involves intentional dishonesty for personal gain, and "a tax crime, which entails stepping over a line not always clearly demarcated"); [4] *McBride*, 642 A.2d at 1273 (attorney's fraudulent acts were intended to assist a client in need, not for personal monetary gain); *Kent*, 467 A.2d at 984 (attorney's acts of shoplifting were the result of a mental disorder, not an attempt to derive personal gain from theft).

■ We conclude that this case is much closer on its facts to cases such as *Untalan, Bond,* and *Meisnere*, in which attorneys were held to have committed crimes of moral turpitude by engaging in acts of intentional dishonesty for personal gain.[5] Although Sneed testified that he was motivated by altruism and a desire to help his friend Truesdell, that testimony was fatally undermined by the fact that he knowingly accepted almost $4,000 as payment for his role in a scheme to defraud the federal government.

Finally, Sneed's reliance on his disciplinary treatment in Texas, New York, and Wisconsin [6] is unavailing. While in other circumstances reciprocal disciplinary proceedings might be appropriate, they are not available in a case like this because Congress has dictated otherwise, and we cannot ignore the congressional command. Under D.C.Code § 11–2503(a), a conviction of a crime involving moral turpitude mandates disbarment. Since there is substantial evidence in this case to support a finding of moral turpitude, as we have held, disbarment must follow as the night follows the day. The more lenient treatment that Sneed has received in Texas, New York, and Wisconsin is irrelevant here.

It is therefore ORDERED that respondent, Thuryo A. Sneed, shall be disbarred from the practice of law in the District of Columbia, effective thirty days from the date of this opinion.[7]

---

4. Shorter was convicted of willful tax evasion, a felony, and six counts of willful failure to pay taxes, a misdemeanor. We held "that neither offense was, *per se*, a crime of moral turpitude," and that "the specific acts underlying the charges did not necessarily include conduct involving moral turpitude." *In re Shorter, supra*, 570 A.2d at 766.

5. For this reason we reject Sneed's contention that the statutory term "moral turpitude" is void for vagueness. As both the Board and Bar Counsel point out, his vagueness argument is essentially an assertion that section 11–2503(a) fails to give him adequate notice that his conduct might subject him to disbarment. We agree with Bar Counsel that this argument "is untenable where his acts fall in a category long held covered by the statute in question." *See Wainwright v. Stone*, 414 U.S. 21, 22, 94 S.Ct. 190, 192, 38 L.Ed.2d 179 (1973); *Willcher v. United States*, 408 A.2d 67, 73 (D.C.1979).

6. In Texas and New York, Sneed was suspended for eighteen months. In Wisconsin, proceedings are apparently still pending, but the Wisconsin equivalent of our Board on Professional Responsibility has recommended a similar suspension.

7. We also direct respondent's attention to D.C.Bar Rule XI, §§ 14(g), 14(h), and 16(a).