**In re Ronald E. TUCKER, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 94–BG–1280.**

District of Columbia Court of Appeals.

Argued Feb. 2, 2000.

Decided June 29, 2000.

---

John T. Irick, College Park, MD, for respondent.

Elizabeth A. Herman, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel at the time the brief was filed, was on the brief, for petitioner, the Office of Bar Counsel.

Before RUIZ and WASHINGTON, Associate Judges, and GALLAGHER, Senior Judge.

PER CURIAM:

The Board on Professional Responsibility (the "Board") recommended that respondent, Ronald E. Tucker, be disbarred for a conviction of a crime of moral turpitude. Tucker filed an exception to the Board's Report and Recommendation challenging whether the Board's determination that his conduct involved moral turpitude is supported by substantial evidence in the record. We adopt the recommendation of the Board that Tucker be disbarred.

## I.

On September 16, 1994, Tucker entered a plea of guilty in the United States District Court for the District of Columbia to one count of attempted bribery, a misdemeanor. The bribery charges against Tucker arose from his admitted conduct in paying Ron Morris, an employee of the District of Columbia Bureau of Traffic Adjudication ("BTA"), to "fix" certain parking tickets so that they would not have to be paid.[1]

On October 17, 1994, this court entered an order suspending Tucker from practice pending the determination of the appropriate discipline. Tucker was ordered to file a D.C. Bar R. XI, § 14(g) affidavit within ten days of the order but failed to do so. On April 18, 1995, the Board determined that while the crime of bribery is an offense involving moral turpitude *per se*,[2] misdemeanor offenses are never crimes of moral turpitude *per se*. See *In re McBride*, 602 A.2d 626, 632 (D.C.1992) (en banc). Therefore, the Board determined that the crime was not one involving moral turpitude *per se* and referred the matter to a Hearing Committee for a determination

---

1. Tucker admitted that since 1987 or 1988, he utilized Morris to take care of parking tickets, and on six to eight different occasions he gave money to Morris to fix tickets. Tucker also admitted that on or about August 12, 1992, he gave $80.00 in cash to Morris in return for Morris' promise to use his position to make the BTA records indicate that certain parking tickets totaling $155.00 in Tucker's possession had been paid or had been dismissed. Tucker further admitted that on July 1, 1992, he had given Morris $70.00 in cash to "fix" parking tickets worth $215.00. Furthermore, Tucker signed a statement to a Federal Bureau of Investigation ("FBI") agent describing the scheme and acknowledging that it had extended over several years.

2. *In re Glover–Tonwe*, 626 A.2d 1387, 1388 (D.C.1993).

of moral turpitude on the facts and what final discipline is appropriate in light of Tucker's conviction of a "serious crime" within the meaning of D.C. Bar R. XI, § 10(b).

On April 24, 1995, Bar Counsel filed a petition charging Tucker with violations of the District of Columbia Rules of Professional Conduct: Rule 3.5(a) (seeking to influence judge or other official); Rule 8.4(a) (violating or attempting to violate Rules); Rule 8.4(b) (committing a criminal act; engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and Rule 8.4(d) (engaging in conduct that seriously interferes with administration of justice). Bar Counsel also charged a violation of D.C.Code § 11–2503(a) (1995) (moral turpitude) and requested discipline based upon this court's finding of a serious crime pursuant to D.C. Bar R. XI, § 10(b).

Bar Counsel filed a motion to obtain records of the FBI and to produce an FBI agent to testify at the hearing. On February 23, 1996, Tucker filed an incomplete affidavit as an attachment to a motion for reinstatement before this court. On March 7, 1996, this court denied Tucker's motion. On February 27, 1997, this court granted Bar Counsel's motion to elicit the FBI's evidence.[3] On June 3, 1997, an evidentiary hearing, at which Tucker did not testify, was held before the Hearing Committee.

On April 2, 1998, Hearing Committee Four ("Hearing Committee") issued its report, finding that the evidence presented by Bar Counsel clearly and convincingly showed that Tucker's conduct involved moral turpitude on the facts because the totality of facts surrounding his conduct involved sufficient intentional dishonesty for the purpose of personal gain. Tucker noted an exception to the Hearing Committee's report.

On November 12, 1998, the Board ordered Tucker to file a supplemental section 14(g) affidavit if he wished the Board to consider it along with his exception to the Hearing Committee's report. On December 18, 1998, Tucker filed a supplemental affidavit. On January 4, 1999, the Board adopted the factual findings of the Hearing Committee and agreed with it that Tucker's conduct involved moral turpitude on the facts on the basis that Tucker's actions involved intentional dishonesty for personal gain. The Board, in reaching its conclusion, found that Tucker's misconduct was extremely serious despite the small amount of money involved. According to the Board, Tucker's offense was "so at odds with his responsibility as a citizen and member of the bar that it deeply offended the general moral sense of right and wrong." Therefore, the Board recommended his disbarment, *nunc pro tunc* to December 18, 1998. Tucker took exception to the Board's recommendation.

## II.

▮▮ Tucker contends that the Board's determination that his conduct involved moral turpitude is not supported by substantial evidence in the record. When reviewing a recommended disciplinary sanction against an attorney, we accept the Board's findings of fact in the report if they are supported by substantial evidence in the record. *See* D.C. Bar R. XI, § 9(g)(1); *In re Clarke*, 684 A.2d 1276, 1280 (D.C.1996). Further, we will adopt the Board's recommended sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted."[4] D.C. Bar R. XI, § 9(g)(1); *see, e.g.,*

---

3. *In re Tucker*, 689 A.2d 1214 (D.C.1997).

4. Tucker argues that the disposition in this case is inconsistent with our prior decisions. However, two of the cases cited by Tucker are not even factually similar to this case. *See In re Shillaire*, 549 A.2d 336 (D.C.1988) (conviction of unlawful possession of Federal insignia and harassment of Federal witness); *In re Lovendusky*, No. 84–1672 (D.C. April 4, 1986) (conviction of attempted carnal knowledge of minor). The other cases cited by Tucker concerning financial impropriety are also distinguishable because in those cases, unlike here,

*In re Sneed,* 673 A.2d 591, 593 (D.C.1996); *In re Steele,* 630 A.2d 196, 199 (D.C.1993). However, "[w]e review *de novo* any Board determination of moral turpitude, since 'the ultimate issue of moral turpitude is one of law rather than of fact.'" *Kerr, supra* note 4, 611 A.2d at 553 (quoting *Shillaire, supra* note 4, 549 A.2d at 343).

 An attorney convicted of a misdemeanor is entitled to a hearing to "consider the circumstances of the transgression," and thus to determine whether that crime, on its particular facts, involved moral turpitude. *McBride,* 602 A.2d at 635 (quoting *In re Colson,* 412 A.2d 1160, 1165 (D.C.1979) (en banc)). We have defined moral turpitude as an act that:

(1) 'offends the generally accepted moral code of mankind,' (2) is one 'of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of rights and duty between man and man;' or (3) is '[c]onduct contrary to justice, honesty, modesty, or good morals.'

*In re Robbins,* 678 A.2d 37, 38–39 n. 1 (D.C.1996) (quoting *Colson,* 412 A.2d at 1168). We have further noted that "[a]s the term is applied in our disciplinary cases, moral turpitude has been held to include acts of intentional dishonesty for personal gain." *Sneed,* 673 A.2d at 594 (citing *In re Untalan,* 619 A.2d 978, 979 (D.C.1993); *In re Shorter,* 570 A.2d 760, 765 (D.C.1990); *In re Kent,* 467 A.2d 982, 984 (D.C.1983)). As we previously noted, "if the crime at issue is a misdemeanor, we must look beyond its statutory definition to the underlying facts; 'we cannot find moral turpitude merely by reference to the elements of [the criminal statute].'" *Id.* (quoting *McBride,* 602 A.2d at 635).

In this case, the acts of Tucker which led to his misdemeanor conviction warrant a finding of moral turpitude because they involved intentional dishonesty for personal gain. Tucker admitted that he paid Morris, a clerk at the BTA, money on a number of occasions to "fix" parking tickets for him. At the time of his conduct, Tucker knew that such transactions were illegal. The Board noted that even though the amounts of money involved may have been small, the conduct goes to the "heart of integrity of the judicial and governmental system an attorney is obliged to uphold." The Board also adopted the Hearing Committee's finding that Tucker's offense was committed for personal gain. Tucker admitted that he typically paid Morris one-third to one-half of the amount actually owed on the ticket. Furthermore, Tucker was given the opportunity to present evidence in mitigation but failed to present anything exceptional enough to warrant a conclusion that his offense did not involve moral turpitude. Therefore, because there is substantial evidence in this case to support a finding of moral turpitude, we adopt the report and recommendation of the Board.

 Accordingly, it is ORDERED that respondent, Ronald E. Tucker, is disbarred from the practice of law in the District of Columbia, pursuant to D.C.Code § 11–2503(a), *nunc pro tunc* to December 18, 1998.[5]

*So ordered.*

---

the Hearing Committee found that there lacked clear and convincing evidence of the specific intent necessary for a finding of moral turpitude. Like this case, we adopted the findings of the Hearing Committee in those cases because they were supported by substantial evidence in the record. *See In re*

*Perrin,* 663 A.2d 517 (D.C.1995); *In re Wilkins,* 649 A.2d 557 (D.C.1994); *In re Kerr,* 611 A.2d 551, 556 (D.C.1992).

**5.** Tucker argues that if he is disbarred it should be done *nunc pro tunc* to February 23, 1996, the date of his first filing of the affidavit

required by D.C. Bar R. XI, § 14(g). Section 14(g) provides that within ten days after the effective date of an order of disbarment or suspension, the disbarred or suspended attorney must file an affidavit "[d]emonstrating with particularity, and with supporting proof," that he or she has fully complied with the requirements of this rule. *See* D.C. Bar R. XI, § 14(g). However, the February affidavit was incomplete and did not fully comply with the requirements of section 14(g). If a lawyer fails to file a section 14 affidavit, he or she is generally not eligible for reinstatement until five years have elapsed following his or her compliance with section 14. *See* D.C. Bar R. XI, § 16(c). Therefore, Tucker is disbarred *nunc pro tunc* to December 18, 1998, the date that he filed an affidavit in full compliance with section 14(g).