# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
April 6, 2011 Session

## MARK D. TALLEY v. BOARD OF PROFESSIONAL RESPONSIBILITY

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-10-0507-2      James F. Butler, Chancellor**

**No. W2010-02072-SC-R3-BP - Filed October 26, 2011**

This appeal involves a disciplinary proceeding against a Memphis lawyer who pleaded guilty in the Criminal Court for Shelby County to facilitating the felonious violation of the Tennessee Securities Act. After a Board of Professional Responsibility hearing panel recommended that he be disbarred, the lawyer filed a petition for writ of certiorari in the Chancery Court for Shelby County seeking judicial review of the hearing panel's decision. The trial court affirmed the recommendation of the hearing panel, and the lawyer appealed to this Court. On appeal, the Board of Professional Responsibility asserts that the lawyer's petition should be dismissed because his petition for writ of certiorari did not contain the recitation required by Tenn. Code Ann. § 27-8-106 (2000). For his part, the lawyer asserts that the punishment of disbarment is excessive. We have determined that the lawyer's deficient petition for writ of certiorari does not prevent the courts from reviewing the hearing panel's decision. We have also determined that the record fully supports the hearing panel's findings and that disbarring the lawyer is not an excessive punishment in light of the facts and circumstances of this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., GARY R. WADE, and SHARON G. LEE, JJ., joined. JANICE M. HOLDER, J., filed a separate concurring opinion.

Ted I. Jones, Memphis, Tennessee, for the appellant, Mark D. Talley.

Randall J. Spivey, Disciplinary Counsel, Nashville, Tennessee, for the appellee, Board of Professional Responsibility.

**OPINION**

**I.**

Mark D. Talley is a lawyer practicing in Memphis who was licensed to practice law in 1984. In 2000, he was one of a number of persons indicted by a federal grand jury in the Northern District of Florida for conduct relating to a ponzi scheme involving Luxor Capital Markets Group ("Luxor"). Luxor was a Tennessee corporation, and Mr. Talley had been retained by Luxor to act as an "escrow agent." Approximately $1,000,000 of investors' money passed through Mr. Talley's trust account and was allegedly disbursed in a manner inconsistent with representations to the investors.

Mr. Talley was acquitted of all charges, following a six-week trial in the United States District Court for the Northern District of Florida. However, shortly after the trial, a lawyer representing the receiver of one of the corporations affiliated with Luxor filed a complaint against Mr. Talley with the Board of Professional Responsibility ("Board") regarding Mr. Talley's conduct as Luxor's "escrow agent." On October 29, 2001, disciplinary counsel filed a petition for discipline alleging that Mr. Talley had violated Tenn. Sup. Ct. R. 8, DR-102(A)(1) - (6), DR 2-110(B)(2), DR-102(A)(7) & (8), -102(B)(1), and DR-9-102(A) & (B) in the course of his work with Luxor.

Mr. Talley retained counsel and, on July 28, 2005, entered a conditional guilty plea in which he admitted that he had violated Tenn. Sup. Ct. R. 8, DR-1-102(A)(1), -102(A)(6) and DR 9-102(A) & (B). Mr. Talley agreed to be suspended from the practice of law "for five (5) years plus an indefinite suspension (until restitution is made) with all time suspended except for six months [(180 days)] beginning January 1, 2006, with all remaining time to be served on probation." He also agreed to repay Mr. and Mrs. Michael Thornton $170,000 by making "monthly payments . . . in an amount equal to 10% of his gross income from all sources until restitution . . . is paid in full."

On November 7, 2005, this Court entered an order of enforcement with regard to the matters included in Mr. Talley's conditional guilty plea. The order suspended Mr. Talley from the practice of law for five years plus an indefinite suspension until he repaid the Thorntons $170,000. The order expressly required Mr. Talley to pay the Thorntons "10% of his gross income from all sources" until all the restitution had been paid. The order also directed Mr. Talley to pay the costs of the disciplinary proceeding.

While the disciplinary complaint against Mr. Talley stemming from his activities on behalf of Luxor was pending, Mr. Talley was employed as an attorney with Allstate Financial Corporation ("Allstate Financial"). Mr. Talley described Allstate Financial as being in the "factoring business" that was part of a "covered call strategy joint venture." On August 25,

2005, less than one month after the entry of his conditional guilty plea with the Board stemming from his activities with Luxor, Mr. Talley was indicted by a Shelby County grand jury for his activities as an employee of Allstate Financial. The indictment alleged that Mr. Talley was guilty of one count of conspiracy to commit theft of property over the value of $60,000, four counts of Tennessee Securities Act violations, six counts of theft of property over the value of $60,000, two counts of theft of property over the value of $10,000, and one count of theft of property over the value of $1,000.00. Mr. Talley's attorney informed the Board that Mr. Talley had been indicted.

On December 19, 2005, disciplinary counsel filed a petition for discipline against Mr. Talley based on his work on behalf of Allstate Financial. Citing the charges in the indictments against Mr. Talley, the petition alleged that Mr. Talley had violated Tenn. Sup. Ct. R. 8, RPC 1.15 and RPC 8.4(a)-(d). While Mr. Talley filed an answer to the petition on January 13, 2006, he apparently failed to respond to repeated discovery requests and attempts to set the matter for a hearing.

One of the Board's hearing panels conducted a hearing by telephone on May 8, 2007. In an order filed on May 25, 2007, the hearing panel found that the allegations in the petition for discipline would be "take[n] as confessed" because of Mr. Talley's failure to respond to the discovery requests and efforts to set the petition for a hearing. The hearing panel concluded that Mr. Talley had violated "DR 8.4 and DR 1.15." After finding two aggravating circumstances[1] and no mitigating circumstances, the hearing panel determined that Mr. Talley should be disbarred. In accordance with Tenn. Sup. Ct. R. 9, § 1.3, Mr. Talley filed a petition for writ of certiorari in the Chancery Court for Shelby County seeking judicial review of the hearing panel's decision.

On December 12, 2007, while the proceedings to review the hearing panel's decision were pending, Mr. Talley pleaded guilty in the Criminal Court for Shelby County to a misdemeanor of "facilitation, to wit, violation of securities law" and accepted a suspended sentence of eleven months and twenty-nine days. By agreement, the sentencing court placed Mr. Talley on probation for eleven months and twenty-nine days, fined him $500 and costs, and ordered him to perform one hundred hours of community service work.

On July 22, 2009, the trial court in which Mr. Talley's petition seeking judicial review of the hearing panel's May 25, 2007 order was pending filed an order vacating the hearing panel's judgment and remanding the matter to the hearing panel for further proceedings. On the same day, the Board's chair appointed a new hearing panel and directed the hearing panel

---

[1]The two aggravating circumstances were (1) Mr. Talley's "prior history of unethical conduct" and (2) Mr. Talley's "previous suspensions from the practice of law."

to conduct another hearing and to report its findings within fifteen days following that hearing.

The second hearing panel conducted a hearing on January 15, 2010. Mr. Talley testified at this hearing. The panel filed its findings and recommendations on January 27, 2010. It found:

(1)     that Mr. Talley had acted as counsel for Allstate Financial;

(2)     that Mr. Talley and other principals of Allstate Financial had been indicted on August 25, 2005 for

conspiracy to commit theft of property over $60,000, . . . employing "a device, scheme or artifice to defraud investors in connection with the offer, sale or purchase of a security, to wit: investments/reinvestments in Allstate Financial Corporation, in violation of T.C.A. § 48-2-121; . . .", [and] unlawfully or knowingly, directly or indirectly, engaging "in an act, practice, or course of business which operates or would operate as a fraud or deceit upon investors in connection with the offer, sale, or purchase of a security, to wit: investments/reinvestments in Allstate Financial Corporation, in violation of T.C.A. § 48-2-121 . . .";

(3)     that Mr. Talley's lawyer had reported this indictment to the Board of Professional Responsibility;

(4)     that Mr. Talley had pleaded guilty to facilitation of a violation of the Tennessee Securities Act;

(5)     that by pleading guilty to facilitation of a criminal violation of the Tennessee Securities Act, Mr. Talley "admitted" to being "criminally responsible for the facilitation of a felony [by furnishing] . . . substantial assistance in the commission of a felony;"

(6)     that the felony Mr. Talley pleaded guilty to facilitating "specifically involved the employment of a device, scheme or artifice to defraud investors in connection with the offer, sale or purchase of a security";

(7)    that in return for this guilty plea, Mr. Talley had received a suspended sentence of eleven months and twenty-nine days and had been placed on probation for the duration of the suspended sentence;

(8)    that Mr. Talley had also been ordered to pay a $500 fine plus costs and had been ordered to perform one hundred hours of community service work;

(9)    that Mr. Talley had filed a conditional guilty plea with the Board on July 28, 2005 involving "conduct similar in nature to the wrongful conduct" set out in the petition for discipline filed on December 19, 2005;

(10)   that Mr. Talley "failed to admit any guilt in testimony before the [hearing] [p]anel and showed little, if any, remorse with regard to his conduct;"

(11)   that Mr. Talley stated that he pleaded "guilty in both instances in order to avoid the 'hazards of litigation' and that he did not believe that he had done anything criminally wrong in the matter before the [p]anel;" and

(12)   that Mr. Talley facilitated a fraud that cost investors five to six million dollars, a loss that was reasonably foreseeable at the time of his misconduct.

Based on these findings of fact, the hearing panel concluded that Mr. Talley's December 12, 2007 guilty plea constituted an admission of violations of Tenn. Sup. Ct. R. 8, DR-1-102(A)(1), (3)-(6).[2]  Thus, the hearing panel found that Mr. Talley (1) violated a disciplinary rule, (2) engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, (3) engaged in conduct that is prejudicial to the administration of justice, and (4) engaged in conduct that adversely reflects on his fitness to practice law.  Tenn. Sup. Ct. R. 8, DR-1-102(A)(1), (3)-(6).

Turning to the appropriate punishment, the hearing panel determined that the crime to which Mr. Talley pleaded guilty was a "serious crime" for the purpose of the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards").  The hearing panel determined that Mr. Talley's conduct falls within Section 5.11(b) of the ABA Standards, for which disbarment even absent aggravating circumstances is generally

---

[2]Prior to March 1, 2003, the effective date of the current Rules of Professional Conduct, the Code of Professional Responsibility governed the professional conduct of lawyers. *See Henderson v. Board of Prof'l Responsibility*, 125 S.W.3d 405, 408 n.2 (Tenn. 2003).  The conduct for which Mr. Talley was indicted and pled guilty occurred between February 1, 1995 and May 1, 2002.  As a result, the hearing panel specifically recognized that it was the Disciplinary Rules of the Code of Professional Responsibility that were in effect at the time.

appropriate. The hearing panel also found the presence of three aggravating factors.[3] Accordingly, the hearing panel unanimously recommended that Mr. Talley should be disbarred.

On March 16, 2010, Mr. Talley filed a petition for writ of certiorari in the Chancery Court for Shelby County, seeking judicial review of the hearing panel's January 27, 2010 order. Mr. Talley supported his petition with an affirmation but failed to include a recitation indicating that the petition was his first application for the writ. In his petition, Mr. Talley insisted that the crime to which he had pleaded guilty was not a "serious crime" for the purpose of the ABA Standards and that disbarment was an excessive punishment. On August 31, 2010, the trial court filed a meticulously detailed order rejecting Mr. Talley's argument that facilitating the violation of the Tennessee Securities Act was not a "serious offense" and affirming the findings and recommendations of the hearing panel. Mr. Talley filed a timely notice of appeal.

The Board of Professional Responsibility asserts that this Court lacks subject matter jurisdiction over Mr. Talley's appeal. Mr. Talley disagrees. Mr. Talley also argues that disbarment is an excessive punishment because the offense he pleaded guilty to is a misdemeanor and not a felony. The Board insists that the punishment imposed is consistent with the ABA Standards and is not excessive.

## II.

This Court is the final and ultimate arbiter of the propriety of the professional conduct of all lawyers practicing in Tennessee. *Flowers v. Board of Prof'l Responsibility,* 314 S.W.3d 882, 891 (Tenn. 2010); *see also Sneed v. Board of Prof'l Responsibility*, 301 S.W.3d 603, 612 (Tenn. 2010). Accordingly, when we are called upon to review judgments in disciplinary proceedings against lawyers, we do so in light of our fundamental and inherent power to promulgate, administer, and enforce the rules governing the licensing and professional conduct of lawyers practicing in Tennessee. *Sneed v. Board of Prof'l Responsibility*, 301 S.W.3d at 612; *see also Rayburn v. Board of Prof'l Responsibility*, 300 S.W.3d 654, 660 (Tenn. 2009).

When an attorney or the Disciplinary Counsel seeks judicial review of a hearing panel's decision, the trial court's "review shall be on the transcript of the evidence before the hearing panel and its findings and judgment." Tenn. Sup. Ct. R. 9, § 1.3. However, "[i]f

---

[3]These aggravating factors included: (1) Mr. Talley is an experienced lawyer; (2) Mr. Talley had a prior disciplinary offense arising out of a similar factual pattern, and (3) Mr. Talley had shown little, if any, remorse or willingness to admit his misconduct with regard to either the prior violation or the current criminal offense.

allegations of irregularities in the procedure before the panel are made, the trial court is authorized to take such additional proof as may be necessary to resolve such allegations." Tenn. Sup. Ct. R. 9, § 1.3. If either the attorney or the Disciplinary Counsel appeals to this Court, our review of an appeal in a disciplinary matter is based upon the transcript of the record before the trial court and a transcript of evidence before the hearing panel and before the trial court if any evidence has been produced. Tenn. Sup. Ct. R. 9, § 1.3.

Like the trial court, we

> may affirm the decision of the panel or remand the case for further proceedings. [We] may reverse or modify the decision if the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3; *see also Flowers v. Board of Prof'l Responsibility,* 314 S.W.3d at 891; *Sneed v. Board of Prof'l Responsibility*, 301 S.W.3d at 612.

## III.

Last year, in a proceeding seeking judicial review of a hearing panel's decision, this Court held that the petition for writ of certiorari required by Tenn. Sup. Ct. R. 9, § 1.3 "must be supported by oath or affirmation and state that it is the first application for the writ." *Board of Prof'l Responsibility v. Cawood*, 330 S.W.3d 608, 609 (Tenn. 2010).[4] We also held that "a court lacks subject matter jurisdiction over a statutory petition for certiorari that is not supported by oath or affirmation." *Board of Prof'l Responsibility v. Cawood*, 330 S.W.3d

---

[4]On May 2, 2011, this Court amended Tenn. Sup. Ct. R. 9, § 1.3 to expressly include the oath or affirmation and recitation requirements recognized in *Cawood*. Accordingly, as amended, Tenn. Sup. Ct. R. 9, § 1.3 requires that "[a] petition under this section shall be made under oath or affirmation and shall state that it is the first application for the writ." The oath or affirmation requirement mirrors the requirement in Tenn. Code Ann. § 27-8-106 (2000) that a petition for writ of certiorari "be sworn to" and the requirement in Tenn. Cost. art. VI, § 10 that the petition be "supported by oath or affirmation." The requirement that the petition "state that it is the first application for the writ" mirrors the requirement in Tenn. Code Ann. § 27-8-106. However, Tenn. Const. art. VI, § 10 does not require a writ of certiorari to recite that it is "the first application for the writ." In terms of these verification and recitation requirements, there is no difference between Tenn. Sup. Ct. R. § 9, 1.3 as it existed prior to our May 2, 2011 amendment, the prior version at issue in the present case, and the current post-amendment version of Tenn. Sup. Ct. R. § 9, 1.3.

at 609 (citing *Depew v. King's, Inc.*, 197 Tenn. 569, 570-72, 276 S.W.2d 728, 728-29 (1955)).

Because the petition the Board filed in *Cawood* contained neither an oath or affirmation nor a recitation that it was the first application for the writ, we concluded that these omissions deprived the trial court of subject matter jurisdiction and required this Court to dismiss the Board's appeal. *Board of Prof'l Responsibility v. Cawood*, 330 S.W.3d at 609. We have since applied this reasoning to petitions filed by attorneys seeking to review a hearing panel's decision that did not contain an oath or affirmation or a recitation that the petition was the first application for the writ. *See, e.g., Penn v. Board of Prof'l Responsibility*, ___ S.W.3d ___, ___, 2011 WL 1542989, at *1 (Tenn. 2011); *Nebel v. Board of Prof'l Responsibility*, ___ S.W.3d ___, ___, 2011 WL 197868, at *1 (Tenn. 2011).[5]

The Board asserts that *Cawood* requires us to dismiss Mr. Talley's appeal. However, Mr. Talley's petition differs significantly from the petition we found fatally defective in *Cawood*. The petition in *Cawood* contained neither an oath or affirmation nor a recitation that it was the first application for the writ. Mr. Talley's petition, however, contains the required affirmation[6] but does not contain the recitation that it is the first application for the writ. Accordingly, we must now decide whether an otherwise proper petition seeking judicial review of a hearing panel's decision that does not contain the recitation that it is the first application for the writ is insufficient to confer subject matter jurisdiction on the reviewing courts.

The courts' power to issue writs of certiorari flows from Article VI, Section 10 of the Tennessee Constitution. Thus, in order to vest a court with subject matter jurisdiction in a certiorari proceeding, a petition for writ of certiorari must satisfy Article VI, Section 10's

---

[5]We have also held that the verification (oath or affirmation) and recitation requirements (statement the petition is the first application for the writ) are not applicable to appeals in criminal cases by writ of certiorari to the Court of Criminal Appeals. *See State v. L.W.*, ___ S.W.3d ___, ___, 2011 WL 3587466, at *1-2 (Tenn. 2011).

[6]The contemporary meanings of "oath" and "affirmation" are:

[O]ath has two different meanings: (1) a swearing to God that one's statement is true or that one will be bound to a promise; or (2) a statement or promise made when one so swears. An affirmation is a similar declaration without the religious invocation.

Bryan A. Garner, *A Dictionary of Modern Legal Usage* 607 (2d ed. 1995); see also Black's Law Dictionary 64 (8th ed. 2004). The verification in Mr. Talley's petition states: "I, Mark D. Talley, hereby state under oath or by affirmation that the facts in the preceding petition for certiorari are true and correct to the best of my knowledge, information and belief." This verification clearly satisfies Tenn. Sup. Ct. R. 9, § 1.3, Tenn. Const. art. VI, § 10, and Tenn. Code Ann. § 27-8-106.

requirements. Article VI, Section 10 requires petitions for a writ of certiorari to be "supported by oath or affirmation." Because this requirement is constitutional, it is mandatory. *See Beck v. Knabb*, 1 Tenn. (1 Overt.) 55, 57-58, 60 (1804). The courts cannot waive this requirement, *Depew v. King's, Inc.*, 197 Tenn. at 571, 276 S.W.2d at 729; *Crane Enamelware Co. v. Smith*, 168 Tenn. 203, 206, 76 S.W.2d 644, 645 (1934), because it is jurisdictional, and subject matter jurisdiction cannot be conferred by waiver or consent. *McCarver v. Insurance Co. of Penn.*, 208 S.W.3d 380, 383 (Tenn. 2006); *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996).

Conversely, the requirement that a petition for writ of certiorari state that it is the first application for the writ is not found in the Constitution of Tennessee. For the purposes of this case, it is found only in Tenn. Code Ann. § 27-8-106[7] and Tenn. Sup. Ct. R. 9, § 1.3. In 1951, this Court determined that the omission of the recitation that the petition was the first application for a writ of certiorari was not jurisdictional when it affirmed a trial court's decision to permit a petitioner to amend his petition for writ of certiorari to add the missing recitation, which was required only by statute, and held that the amendment "relate[d] back to the filing of the original pleadings." *See Louisville & Nashville R.R. v. Hammer*, 191 Tenn. 700, 705, 236 S.W.2d 971, 973 (1951).

Mr. Talley's petition for writ of certiorari is deficient because it does not contain the recitation that it is the first application for the writ as required by Tenn. Sup. Ct. R. 9, § 1.3. However, unlike the oath or affirmation requirement, this oversight is waivable. In the present case, the obligation to meet the recitation requirement arose from this Court's rule, which directed appealing parties to adhere the statutory procedures established for pursuing a writ of certiorari except where altered by Tenn. Sup. Ct. R. 9. There is a significant difference between expanding the court's jurisdictional authority to issue a writ of certiorari beyond that granted by the Constitution of Tennessee and allowing waiver of a failure to adhere to a court-imposed rule. *See Crane Enamelware Co. v. Smith*, 168 Tenn. at 206, 76 S.W.2d at 645 (noting that while a court could not allow an amendment to permit an untimely verification of a petition for writ of certiorari, it could waive its own rule).

The Board did not challenge Mr. Talley's petition in the trial court. We fail to see how the Board has been prejudiced by Mr. Talley's failure to include the recitation in his petition, particularly in light of the undisputed fact that Mr. Talley's petition was, in fact, the first petition for writ of certiorari he filed seeking review of the hearing panel's January 27, 2010 order. Accordingly, we find that the Board waived its challenge to the omission of the

---

[7]This Court has recognized that petitions for a writ of certiorari can be regulated, as long as the right to file the writ is not abridged. *See Duggan v. McKinney*, 15 Tenn. (7 Yer.) 21, 22 (1834); Robert T. Shannon, *The Constitution of the State of Tennessee* 448 n.5 (1915). The requirement that a petition for writ of certiorari state that it is the first application for the writ has existed since 1858. *See* Code of Tennessee § 3128 (Return J. Meigs & William F. Cooper eds., E.G. Eastman & Co. 1858).

recitation in Mr. Talley's petition and, therefore, that Mr. Talley's oversight does not deprive the trial court or this Court of subject matter jurisdiction in this proceeding.

## IV.

Mr. Talley's sole argument on this appeal is that disbarment is excessive punishment. Relying on Tenn. Sup. Ct. R. 9, § 14.2, he asserts that he did not plead guilty to a "serious crime" because he pleaded guilty to a misdemeanor. Mr. Talley's reliance on Tenn. Sup. Ct. R. 9, § 14.2 is misplaced for two reasons.

The first reason is that the definition of "serious crime" in Tenn. Sup. Ct. R. 9, § 14.2 relates to the summary suspension of a law license "pending final disposition of a disciplinary proceeding." *See* Tenn. Sup. Ct. R. 9, § 14.1. It does not involve the offenses for which an attorney may be disbarred. The second reason is that Mr. Talley's argument ignores the plain language of Tenn. Sup. Ct. R. 9, § 14.2, which defines a "serious crime" as

> any felony under the laws of Tennessee and any other crime a necessary element of which as determined by the statutory or common law definition of such crime, involves improper conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a "serious crime."

Tenn. Sup. Ct. R. 9, § 14.2, by its own terms, includes crimes that are not felonies, i.e. misdemeanors.

This case calls upon us to determine how a conviction for facilitation in violation of Tenn. Code Ann. § 39-11-403(a) (2010) should be considered in the context of a disciplinary proceeding against a lawyer. In the criminal context, the seriousness of a facilitation offense is directly related to the underlying offense being facilitated. *See* Tenn. Code Ann. § 39-11-403(b).[8] In the context of lawyer disciplinary proceedings, other states ascertain the seriousness of a conviction for criminal facilitation based on the offense that was facilitated. *See, e.g.*, *In re Untalan*, 619 A.2d 978, 978-79 (D.C. 1993); *In re Gorry*, 821 N.Y.S.2d 113, 114-15 (App. Div. 2006); *In re Katz*, 815 N.Y.S.2d 663, 664 (App. Div. 2006); *In re*

---

[8]Tenn. Code Ann. § 39-11-403(b) states that "[t]he facilitation of the commission of a felony is an offense of the class next below the felony facilitated by the person so charged."

-10-

*Carmen,* 806 N.Y.S.2d 82, 83 (App. Div. 2005).[9] We find this approach to be sound.[10] Because Mr. Talley pleaded guilty to facilitating a felony violation of Tenn. Code Ann. § 48-2-121 (2002), we find that his claim that his offense was not a "serious crime" is without merit.

In any event, the hearing panel did not recommend that Mr. Talley be disbarred because he had committed or pleaded guilty to a "serious crime." The hearing panel based its disbarment recommendation on its finding that Mr. Talley had violated Tenn. Sup. Ct. R. 8, DR-1-102(A)(1), (3)-(6) and that his conduct fell within ABA Standards § 5.11(b). Mr. Talley fails to address how these findings are erroneous. From our own review of the record and the arguments presented, it is not entirely clear whether Mr. Talley's facilitation of securities fraud falls within ABA Standards § 5.11(a) or (b) which presumptively result in disbarment or ABA Standards § 5.12 which presumptively results in suspension.

This ambiguity is not controlling in this case because the presumptions in ABA Standards §§ 5.11 and 5.12 apply in the absence of aggravating and mitigating circumstances. *See* ABA Standards § 5.1. In this case, there are no mitigating circumstances, and the aggravating circumstances are of considerable weight. First, Mr. Talley had already been disciplined for conduct arising out of a similar fact pattern. Second, Mr. Talley was not willing to admit misconduct or to show remorse with regard to either his conduct in this proceeding or his conduct in the earlier disciplinary proceeding.

Furthermore, under ABA Standards § 3.0(c), courts should consider "the potential or actual injury caused by the lawyer's misconduct" when imposing a sanction. Mr. Talley's conduct was part of a fraudulent scheme in which investors lost over five million dollars. The hearing panel concluded that this harm was reasonably foreseeable when Mr. Talley committed his misconduct of facilitating this fraudulent scheme. In other words, Mr. Talley's misconduct caused a staggeringly large injury to investors.

Given the nature the underlying offense facilitated – willful fraud and deceit, the presence of weighty aggravating factors, and an absence of mitigating factors, as well as the extent of the injury caused by Mr. Talley's misconduct, we have little difficulty in concluding that the hearing panel did not impose an excessive sanction in recommending that Mr. Talley be disbarred.

---

[9]In reaching this conclusion, we note that the New York courts are applying a definition of "serious crime" that is strikingly similar to Tenn. Sup. Ct. R. 9, § 14.2. *See* 22 N.Y. Code of Rules and Regulations § 691.7.

[10]This approach is also consistent with this Court's analysis of related criminal concepts such as attempt, conspiracy, and solicitation. *See* Tenn. Sup. Ct. R. 9, § 14.2.

## V.

For the reasons stated above, Mark D. Talley is disbarred from the practice of law in the State of Tennessee. The costs of this appeal are assessed to Mark D. Talley, and his surety, for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE