IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 10, 2017 Session

## RAYMOND HUNTER, JR. v. CITY OF CHATTANOOGA BEER BOARD

**Appeal from the Chancery Court for Hamilton County**
**No. 13-0709  Pamela A Fleenor, Chancellor**

———————————————————

**No. E2017-00017-COA-R3-CV**

———————————————————

The petitioner seeks reversal of the denial of a beer permit by the city.  City's board asserts that the property is unsuitable for a beer permit as it has lost its zoning status as a "grandfathered in" restaurant, bar, or event hall.  The trial court affirmed the board's action.  The petitioner filed this appeal.  The trial court lacked subject matter jurisdiction to consider it.  We vacate the trial court's order and dismiss this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Vacated; Case Dismissed**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Raymond Hunter, Jr., Chattanooga, Tennessee, pro se.

Keith J. Reisman and Melinda Foster, Chattanooga, Tennessee, for the appellee, City of Chattanooga Beer Board.

## OPINION

### I. BACKGROUND

On February 20, 1979, the Chattanooga Board of Commissioners adopted Ordinance Number 7476, which zoned the property now owned by Raymond Hunter, Jr. (hereinafter, "the Property") at 2510 East Main Street as M-2, "Light Industrial Zone." Restaurant, bars, and event halls are not permitted uses on land zoned M-2.  The Property had previously been zoned C-2.

No evidence was presented at trial regarding the use of the Property prior to 1988. The petitioner in this matter, Hunter, attached exhibits to his appellate brief to reflect that the Property was used as a restaurant and/or bar before the zoning change in 1979. Hunter also attempted to supplement the record before this court.

A business license with the City of Chattanooga ("City") is for one year and expires on March 31 of each year. The license history for the Property was introduced at trial and reflected the following restaurant and/or bar use: Spuds of Ridgedale obtained a business license to operate on the Property on April 21, 1988. More than a year after Spuds of Ridgedale closed on July 26, 1989, a business named D & D obtained a permit on August 16, 1990, and then closed on August 16, 1991. More than two and a half years later, Stroker's obtained a business license to operate on the Property on March 3, 1994. Stroker's did not renew its license, which expired by operation of law on March 31, 1995. Bootscooters applied for a business license to operate on the Property on November 18, 1994. Bootscooters did not renew its license, which expired on March 31, 1995. Birdland Restaurant & Lounge applied for a business license to operate on the Property on March 15, 1995. Birdland's business license expired on March 31, 1996. The Uptown Supper Club obtained a business license to operate on the Property on October 14, 1996. Uptown's business license expired on March 31, 1999.

Hunter purchased the Property in April of 2000. He applied for a business license on May 9, 2000, to operate a restaurant called "Off the Chain" on the Property. The next day, Hunter submitted a change of name for the business from "Off the Chain" to "Boo-Coe's." Hunter first applied for a beer permit with the Chattanooga Beer and Wrecker Board ("the Beer Board") for the Property on September 13, 2000.[1] The application for the beer permit noted that the Property was zoned C-2. The beer permit was approved and issued on October 5, 2000.

After operating for a few years as Boo-Coe's, Hunter submitted a business tax report to the City for the time period April 1, 2003, through March 31, 2004, in which he stated that his business had no gross income. He eventually leased the Property to third-parties. He was not in business with any of the lessees, requiring the tenants to obtain their own business licenses and beer permits.

On March 1, 2004, the G-Spot applied for a business license to operate a bar and grill on the Property. It obtained a beer permit on March 4, 2004, and allowed the permit to expire on December 31, 2006. On June 7, 2007, the Wet Bar obtained a business license to operate a business on the Property. It obtained a beer permit on the same day and allowed the permit to expire on December 31, 2011. A restaurant called El Pokar de

---

[1]It has long been held in this state that municipalities have extensive authority to regulate the sale of beer within their boundaries. *See* Tenn. Code Ann. § 57-5-106; *Fritts v. Wallace*, 723 S.W.2d 948, 949 (Tenn. 1987).

Ases occupied the Property for a short time, but the last beer permit issued for the Property expired on December 31, 2011. The business permit for El Pokar de Ases expired March 31, 2012.

Beginning on May 19, 2012, Hunter began renting the Property as an event hall. According to the relevant code provisions, an event hall is a different use than a restaurant/bar. City's Fire Marshal issued a Certificate of Occupancy Count for an event hall on April 11, 2013. City's Land Development Office issued a Certificate of Occupancy for the event hall on April 17, 2013.

A review of the record reflects that Hunter has a history of City Beer Code violations. On April 18, 2009, at 3:03 a.m., the police and fire marshal went to the Property to conduct a building inspection and observed a line of people waiting to enter the establishment. The Chattanooga Police Department ("CPD") subsequently cited Hunter to appear before the Beer Board for violation of City Code Section 5-47, which prohibits any beer permittee to be open for business after 3:00 a.m. On May 7, 2009, the Beer Board sustained the violation and suspended Hunter's beer permit for three days beginning on May 14, 2009.

On April 19, 2009, CPD was called to the Property for noise complaints at 3:05 a.m. Several vehicles were in the area attempting to find parking, and a line of people were waiting to enter the Property. CPD sent a notice to Hunter to appear before the Beer Board for selling beer after 3:00 a.m. On May 7, 2009, the Beer Board sustained the second violation and suspended Hunter's beer permit for an additional three days beginning on May 17, 2009.

On April 26, 2009 at 3:45 a.m., CPD responded to a call at Boo-Coe's. Approximately one hundred people were inside and traffic around the Property was at a standstill due to the large crowd gathered in and around the business. Four days later, CPD conducted a bar check and found liquor in a locked cabinet despite Hunter not having a liquor license. On June 4, 2009, the Beer Board sustained both the April 26th and April 30th violations and suspended Hunter's beer permit for another three days beginning on June 11, 2009.

On December 20, 2009, a 3:04 a.m. bar check at the Property revealed an ongoing private birthday party. Attendees stated that they had paid $10 each for entry. CPD again advised Hunter that, as a beer permittee, his establishment was not to be open after 3:00 a.m. Hunter was cited to the Beer Board for this violation. He surrendered his beer permit on March 30, 2010. After the surrender of the permit, Hunter continued to use the Property for parties. On September 2, 2012, CPD issued a verbal warning to Hunter after responding to a call to the Property to quell a fight.

In 2012, Hunter began using the Property as an event hall by renting it on

numerous occasions for short terms. Again, during this time, the police were often called to the Property. For example, on May 5, 2013, Hunter rented the Property to Chedda Chedda Enterprises ("C & C"). CPD responded to a call to break up a fight, at which time Hunter was informed that he needed to obtain a Special Gathering Permit. On May 11, 2013, once again, police were called to the event hall to put down a disturbance involving a firearm. Despite the previous two C & C events resulting in disturbances requiring CPD intervention, Hunter rented the event hall to C & C again on June 14, 2013. Police attention was again required. Hunter disclaimed any responsibility for what occurred at the Property once he began renting it out as an event hall.

On September 9, 2013, Hunter applied for the beer permit at issue. The Beer Board held a meeting ten days later at which it considered Hunter's application. The Beer Board members were provided with the history of Hunter's violations during the time he previously held a beer permit. During testimony before the Board, Hunter admitted that he operated the bar at the time of the five violations. He was questioned about his ability to operate the Property responsibly. After listening to Hunter's testimony, the members voted to deny the request for a beer permit. At trial, Beer Board member Ronald Smith summed up the Beer Board's concern: "We didn't think that [Hunter] was going to accept the responsibility of a beer permit holder, because he hadn't done it in the past."

Hunter timely appealed the denial of the beer permit on September 27, 2013, by filing a petition to "Reverse[] Denial of a Beer Permit." He filed a petition to "Amended (sic) Reverse Denial of a Beer Permit" shortly thereafter: A writ of certiorari was issued on September 30, 2013. City argues that none of the initiating documents filed by Hunter were sworn to before the clerk of court, any judge, or a notary public or stated that the pleading was the first application for a writ. On November 1 and 2, 2016, a *de novo* trial was held. On December 15, 2016, the trial court sustained the decision of the Beer Board and ruled that Hunter's application for a beer permit was denied. The court based its judgment on two grounds:

> (1) The Property was not zoned for restaurants, bars, and event halls, and a restaurant, bar, or event hall was not a "grandfathered" used. In addition, even though City in the past had allowed a nonconforming use at the Property, City was not estopped from denying a beer permit for the Property based on the nonconforming use.

> (2) The past history of petitioner "when he operated Boo-Coe's and when he rented the Property to third-parties shows a disregard for City ordinances governing beer sales. As such, . . . the issuance of a beer permit to [Hunter] would interfere with the public health, safety, and morals in

violation of City Code 5-75.

The trial court determined that Hunter's "testimony as to his intent to comply with the beer permit laws was contradicted by his past actions in that regard." Hunter filed his Notice of Appeal on January 4, 2017.

## II. ISSUES

The issues raised in the appeal are as follows:

1. Did the trial court have subject matter jurisdiction to hear and decide Hunter's petition?

2. Was the trial court correct in finding that Hunter was not entitled to a beer permit?

## III. STANDARD OF REVIEW

In a civil action where the trial court sits without a jury, "review of findings of fact by the trial court . . . shall be de novo upon the record . . . accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see Kirkpatrick v. O'Neal*, 197 S.W.3d 674, 678 (Tenn. 2006). We review de novo conclusions of law, including questions of statutory interpretation, with no presumption that the lower court's conclusions are correct. *Id.*, *Wallace v. State*, 121 S.W.3d 652, 656 (Tenn. 2003).

A decision by a municipality to refuse to grant a beer permit "may be reviewed by the circuit or chancery court under the statutory writ of certiorari with a trial de novo. Tenn. Code Ann. § 57-5-108(d); *Metro. Beer Permit Bd. v. Jones*, 625 S.W.2d 267, 268 (Tenn. 1981). As we noted in *Yafai v. Metro. Beer Permit Bd. of Metro. Gov't*,

> Such a review is broader than review under the common law writ of certiorari, which is limited to determining whether the trial court acted illegally, arbitrarily or fraudulently, or in excess of its jurisdiction.
>
> Under the statutory writ, the trial court must conduct a trial de novo, with the case to be tried as if it originated in the trial court. The court is required to weigh the evidence and to render an independent judgment based upon the preponderance of the evidence, and it may substitute its judgment for that of the licensing authority. The court may consider both the evidence contained in the administrative

- 5 -

record and any additional or supplemental evidence that the
parties wish to introduce.

Review to [an appellate court] is also de novo, upon the
record of the trial court, accompanied by a presumption of the
correctness of the court's findings, unless the evidence
preponderates otherwise.

*Id.*, No. M2009-00270-COA-R3-CV, 2010 WL 845379, at *3 (Tenn. Ct. App. Mar. 10,
2010) (citations omitted).[2]

## IV. DISCUSSION

The Tennessee Constitution and statutes set forth the procedure for filing a petition
for a writ of certiorari. The Tennessee Constitution provides the following:

The Judges or Justices of the Inferior Courts of Law and
Equity, shall have the power in all civil cases, to issue writs
of certiorari to remove any cause or the transcript of the
record thereof, from any inferior jurisdiction, into such court
of law, on sufficient cause, ***supported by oath or affirmation***.

Tenn. Const. Art. 6, § 10 (emphasis added). Tennessee Code Annotated section 27-8-
104(a) relating to the power of circuit and chancery courts provides the following: "The
judges of the inferior courts of law have the power, in all civil cases, to issue writs of
certiorari to remove any cause or transcript thereof from any inferior jurisdiction, on
sufficient cause, supported by oath or affirmation." Tennessee Code Annotated section
27-8-104(b) extends this power to chancellors. Tennessee Code Annotated section 27-8-
106 sets forth the required contents of a petition for certiorari as follows: "The petition
for certiorari may be sworn to before the clerk of the circuit court, the judge, any judge of
the court of general sessions, or a notary public, and shall state that it is the first
application for the writ."

Hunter filed his initial petition on September 27, 2013, followed by an amended
pleading on September 30, 2013. These documents were treated as a petition for writ of
certiorari. The initiating documents do not reflect, however, that they were sworn to
before the clerk of court, any judge, or a notary public. Also, neither pleading stated that
it was the first application for a writ. A review of the record reveals the signature of "W.
Frank Brown, III," former Chancellor of Hamilton County who retired in 2014, on one of
the pleadings.

---

[2]The common law writ of certiorari is codified at Tennessee Code Annotated section 27-
8-101.

- 6 -

City argues that the omissions in the pro se petitions are fatal to the court's subject matter jurisdiction:

> [A] trial court's jurisdiction is not solely dependent on whether the petitioner has timely filed a petition seeking certiorari review. Jurisdiction "is also predicated upon the verification requirement in section 27-8-106." "Neither the trial court nor the appellate court acquires jurisdiction over the petition unless it is verified under [Tennessee Code Annotated section 27-8-106]." The petitioner "must verify the contents of the petition *and* swear to the contents of the petition under oath, typically by utilizing a notary public."

*Hirt v. Metro. Bd. of Zoning Appeals*, No. M2015-02511-COA-R3-CV, 2016 WL 7242814, at *2 (Tenn. Ct. App. Dec. 15, 2016) (internal citations omitted). As this court observed in *Terry v. Tennessee Dept. of Correction*, No. W2008-01907-COA-R3-CV, 2009 WL 1138122 (Tenn. Ct. App. Apr. 28, 2009):

> "Notarization and verification are distinct concepts." Verification establishes the truth of the document's contents, while notarization acknowledges the proper execution of the document. "[The] requirement that a petitioner swear to the contents of his petition under oath necessarily connotes that the petitioner is first administered an oath and then states in accordance with that oath that the contents of the petition are true."

*Id.* (internal citations omitted).

A petition lacking the requisite recitation that it was the first application for the writ, although deficient, does not defeat subject matter jurisdiction. *Talley v. Bd. of Prof'l Responsibility*, 358 S.W.3d 185, 192-93 (Tenn. 2011). The requirement for the recitation is not found in the Constitution of Tennessee and is not jurisdictional; the oversight is waivable. *Id.* at 192. However, in civil cases, failure to comply with the verification requirement deprives the court of subject matter jurisdiction. *Id.*; *Bd. of Prof'l Responsibility v. Cawood*, 330 S.W.3d 608, 609 (Tenn. 2010).

In *Hirt*, we discussed subject matter jurisdiction:

> "The concept of subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn.

2000) (citations omitted). It "involves the nature of the cause of action and the relief sought . . . and can only be conferred on a court by constitutional or legislative act." *Id.* (citations omitted). Courts "cannot exercise jurisdictional powers that have not been conferred directly on them expressly or by necessary implication." *Dishmon v. Shelby State Cmty. Coll.,* 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (citation omitted). Because subject matter jurisdiction concerns the basis on which the court derives its authority to act, it cannot be waived. *Sumner v. Campbell Clinic PC*, 498 S.W.3d 20, 27 (Tenn. Ct. App. 2016) (citation omitted). Indeed, the parties cannot confer subject matter jurisdiction on a trial court by an appearance, plea, consent, or silence. *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006) (citations omitted). "The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated." *First Am. Trust Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001) (citations omitted). On appeal, we are required to consider the subject matter jurisdiction of both this Court and that of the trial court "regardless of whether the existence thereof is presented as an issue." *Morrow v. Bobbitt*, 943 S.W.2d 384, 392 (Tenn. Ct. App. 1996) (citations omitted). "[W]hen an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal." *First Am. Trust Co.*, 59 S.W.3d at 141 (citations omitted).

*Hirt*, 2016 WL 7242814, at *2 (emphasis added.).

We note that when the trial court issued the writ of certiorari following the filing of the amended petition, the court recited that Hunter's petition "represented to said Court that the action by the defendant was in error." The record, however, does not reflect that the petition was duly sworn in accordance with the statute. We understand that Hunter is proceeding *pro se*, but "non-lawyers who represent themselves are not excused from complying with the same applicable substantive and procedural law that represented parties must comply with." *Bowling v. Tenn. Bd. of Paroles*, No. M2001-00138-COA-R3-CV, 2002 WL 772695, at *3 n. 6 (citing *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n. 4 (Tenn. Ct. App. 1995)). Because Hunter's petition and amended petition were not sworn to before a clerk of court, any judge, or a notary public as required by Tennessee Code Annotated section 27-8-106, we conclude that the chancery court was without subject matter jurisdiction to review the ruling of the Beer Board. We accordingly vacate the trial court's order and

dismiss this case.

## V. CONCLUSION

The judgment of the trial court is vacated and the case dismissed. Costs of the appeal are assessed to the appellant, Raymond Hunter, Jr.

_____
JOHN W. MCCLARTY, JUDGE