FILED
02/16/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2017 Session

## GEORGE METZ, ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 16-1335-III      Ellen Hobbs Lyle, Chancellor**

_____

### No. M2017-00719-COA-R3-CV

_____

This appeal arises from the dismissal of a petition for writ of certiorari to challenge two administrative decisions by the Planning Commission of the Metropolitan Government of Nashville, Davidson County, Tennessee. The petition was dismissed pursuant to a Tenn. R. Civ. P. 12.02(1) motion for lack of subject matter jurisdiction. The challenge to the first decision was dismissed because the statutory sixty-day period had run from the date the minutes approving the challenged decision had been entered. The challenge to the second decision, the Planning Commission's decision to approve the final site plan, was deemed untimely because the challenge to a site plan must be filed within sixty days of the entry of the minutes approving the master development plan, not the final site plan, and the statutory period had run. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S. delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Gina Crawley, Nashville, Tennessee, for the appellants, George Metz, Marilyn Metz, Aubrey Pearson, Jr., Jacqueline Pearson, Berry Wright, and Evelyn Wright.

John Cooper, Director of Law; Lora Barkenbus Fox, Catherine J. Pham, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County, Tennessee.

William N. Helou, Nashville, Tennessee, for the appellee, The Ridge at Antioch, Limited Partnership.

**OPINION**

George Metz, Marilyn Metz, Aubrey Pearson, Jr., Jacqueline Pearson, Berry Wright, and Evelyn Wright ("Petitioners") are neighbors who live near the site of an affordable housing project called The Ridge at Antioch ("The Ridge"), which is located within the Forest View Park Planned Unit Development Overlay District ("Forest View PUD"). In 1985, the Metropolitan Council ("Metro Council") conditionally approved the Ridge for up to 212 multi-family dwelling units.

In 2016, the developer of The Ridge, The Ridge at Antioch, Limited Partnership, ("the Developer") presented a master development plan (also known as a preliminary master development plan or a preliminary site plan)[1] seeking to reduce the number of dwelling units. The Commission approved the master development plan on March 24, 2016. The minutes for the March 24 meeting were signed and entered on April 14, 2016. At the request of Petitioners, a member of the Metro Council requested a rehearing. The Commission denied the request on April 28, 2016. The Commission approved and entered the minutes for the April 28 meeting on May 12, 2016.

On May 16, 2016, Petitioners filed a petition for writ of certiorari and supersedeas in the Chancery Court for Davidson County, asking the court to review the March 24, April 14, and May 12 decisions. Petitioners alleged that the Commission acted in an arbitrary and judicially excessive manner when it found the Forrest View PUD to be active; however, Petitioners did not support their petition by oath, as required. Petitioners filed several amended petitions but none were supported by oath.

The Metropolitan Government of Nashville and Davidson County ("Metro") filed a motion to dismiss on August 5, 2016, and on August 15, Petitioners filed a proposed new petition that was supported by oath and otherwise complied with the requirements for a writ of certiorari. The trial court granted Metro's motion to dismiss, stating that the original petition filed on May 16 did not meet the requirements for a writ of certiorari. The trial court further ruled that it did not have jurisdiction to grant Petitioners' motion to amend the petition or to convert it into a declaratory judgment action. The Petitioners appealed to this Court, and we affirmed. *See Metz v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2016-02031-COA-R3-CV, 2017 WL 4677248, at *1 (Tenn. Ct. App. Oct. 17, 2017).

---

[1] Metro's previous zoning code used "preliminary master development plan." Its current zoning code uses "master development plan." *See Metro. Gov't of Nashville & Davidson Cty. v. Barry Const. Co.*, 240 S.W.3d 840, 843 n. 5 (Tenn. Ct. App. 2007). Metro also frequently refers to the master development plan as a "preliminary site plan."

While that appeal was pending, the Developer submitted construction and engineering plans to Metro's planning director. The planning director reviewed the detailed plans and certified to the Commission that the plans matched the master development plan approved on March 24, 2016. On October 13, 2016, the Commission approved the final site plan[2] and entered the minutes on October 27.

On December 27, 2016, Petitioners commenced this action by filing a writ of certiorari in the Chancery Court for Davidson County, alleging that the Commission approved "an illegal final site plan" on October 13, 2016. The petition sought injunctive relief from two of the Commission's decisions, the October 13 decision and the April 28 decision to deny a rehearing.

On January 6, 2016, Metro filed a motion to dismiss arguing that the writ of certiorari was time-barred as to both decisions. The trial court granted the motion to dismiss, ruling that "the triggering event for determining the 60-day time to appeal in this case was approval of the revised preliminary site plan" on March 24. Accordingly, Petitioners' writ of certiorari was untimely. This appeal followed.

## ISSUE

This appeal focuses on the subject matter jurisdiction of the trial court to adjudicate the writ of certiorari. Metro filed a Tenn. R. Civ. P. 12.02(1) motion challenging the court's subject matter jurisdiction. The trial court granted the motion and dismissed the petition. Accordingly, the dispositive issue in this appeal is whether the trial court correctly determined that it did not have subject matter jurisdiction.[3]

## STANDARD OF REVIEW

A Rule 12.02 motion to dismiss "seeks only to determine whether the pleadings state a claim upon which relief can be granted." *Edwards v. Allen*, 216 S.W.3d 278, 284 (Tenn. 2007). Such a motion challenges the legal sufficiency of the complaint, not the

---

[2] Metro's zoning code, now repealed, previously referred to the "final site plan" as the "final master development plan." *See Barry Const. Co.*, 240 S.W.3d at 843 n.5.

[3] Petitioners present three issues for our consideration: (1) whether the Commission acted in a discretionary manner when it approved the Developer's final site plan without the benefit of final planned unit development approval; (2) whether the Commission's preferential treatment of the Developer affected its ability to render decisions in accordance with the laws of the land; and (3) whether the Commission has the authority to enter a judgment prior to voting. Metro identifies the dispositive issue as whether the trial court erred in dismissing the petition for common law writ of certiorari where Petitioners missed the mandatory sixty-day deadline for filing. We have determined the dispositive issue in this appeal is whether the trial court correctly determined that it did not have subject matter jurisdiction.

strength of the plaintiffs' proof. *Id*. A Rule 12.02 motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. *Id*. (citing *Stein v. Davidson Hotel Co*., 945 S.W.2d 714, 716 (Tenn.1997)). In considering a motion to dismiss, we are required to take the relevant and material factual allegations in the complaint as true and to construe liberally all allegations in favor of the plaintiffs. *Id*.

The question of whether a court has subject matter jurisdiction is a question of law. *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006). We review issues of law pursuant to the de novo standard. *Edwards*, 216 S.W.3d at 284. Therefore, we review the issue de novo with no presumption of correctness given to the ruling of the trial court. *Nelson v. Wal-Mart Stores, Inc*., 8 S.W.3d 625, 628 (Tenn. 1999).

## ANALYSIS

The concept of subject matter jurisdiction addresses a court's power to adjudicate a particular type of case or controversy. *Staats*, 206 S.W.3d at 541-42. "A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Tennessee Constitution or from legislative acts." *Id*. at 542 (citing *Meighan v. U.S. Sprint Commc'ns Co*., 924 S.W.2d 632, 639 (Tenn. 1996); *Dishmon v. Shelby State Cmty. Coll*., 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999)).

> The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought. Thus, when a court's subject matter jurisdiction is questioned, it must first ascertain the nature or gravamen of the case. The court must then determine whether the Tennessee Constitution, the General Assembly, or the common law have conferred on it the power to adjudicate cases of that sort. Both determinations present questions of law which this court reviews de novo without a presumption of correctness.

*Staats*, 206 S.W.3d at 542-43 (internal citations omitted).

There are two methods to challenge a court's subject matter jurisdiction. The first, and most common, is a "facial" challenge. *Id*. at 542. The second is a "factual" challenge. *Id*. This appeal presents a factual challenge.

> A factual challenge denies that the court actually has subject matter jurisdiction as a matter of fact even though the complaint alleges facts tending to show jurisdiction. It controverts the complaint's factual allegations regarding jurisdiction, and puts at issue the sufficiency of the evidence to prove facts that would bring the case within the court's subject matter jurisdiction. A factual challenge to subject matter jurisdiction creates

- 4 -

"genuine issues as to material fact," but it does not require the court to convert the motion into one for summary judgment. Instead, the court must resolve these factual issues, at least preliminarily. The court must "determine whether the evidence in favor of finding jurisdiction is sufficient to allow the case to proceed."

In assessing factual challenges to subject matter jurisdiction at the motion to dismiss stage, a court must keep in mind that the plaintiff bears the ultimate burden of proving facts establishing the court's jurisdiction over the case. If a defendant has filed affidavits or other competent evidentiary materials challenging the plaintiff's jurisdictional allegations, the plaintiff may not rely on the allegations of the complaint alone but instead must present evidence by affidavit or otherwise that makes out a prima facie showing of facts establishing jurisdiction. The trial court will "take as true the allegations of the nonmoving party and resolve all factual disputes in its favor . . . [without crediting] conclusory allegations or draw[ing] farfetched inferences." However, the court's initial resolution of the factual issues relating to jurisdiction is not final and conclusive. As the Tennessee Supreme Court has explained, the court does "not make any finding as to whether [the plaintiff's] version of events is, in fact, correct. That will be for a jury to decide if the case goes to trial."

*Id.* at 543-44 (internal citations omitted).

Tenn. Code Ann. § 27-9-102 requires that a sworn petition for writ of certiorari be filed within sixty days from the entry of the order or judgment. The time for appealing a Planning Commission decision, as Metro correctly states in its brief, "starts running when the minutes are signed and entered." *See McMurray Drive Area Homeowners Ass'n v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2005-00616-COA-R3-CV, 2006 WL 1026428, at *5 (Tenn. Ct. App. Apr. 18, 2006).

Petitioners challenge two separate decisions of the Commission. We will discuss each in turn.

## I. THE APRIL 28, 2016 DECISION

The petition challenging the April 28, 2016 decision was dismissed as untimely because no petition was filed within sixty days of the entry of the minutes. The minutes were entered on May 12, 2016. The petition was not filed until December 27, 2016, which was more than sixty days from May 12, 2016. Because the petition filed on December 27, 2016 was untimely, the trial court correctly determined that it was without subject matter jurisdiction to hear the appeal. *See Talley v. Bd. of Prof'l Responsibility*, 358 S.W.3d 185, 192 (Tenn. 2011) (discussing Tennessee Constitution, Article VI § 10);

*Bd. of Prof'l Responsibility v. Cawood*, 330 S.W.3d 608, 609 (Tenn. 2010); *Blair v. Tennessee Bd. of Prob. & Parole*, 246 S.W.3d 38, 40 (Tenn. Ct. App. 2007). For these reasons, the trial court correctly determined that it did not have jurisdiction to hear the challenge to the Commission's April 28, 2016 decision.

## II. THE OCTOBER 13, 2016 DECISION

The timeliness of Petitioner's challenge of the October 13, 2016 decision requires a more detailed analysis.

Tenn. Code Ann. § 27-9-101 provides that "anyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have the order or judgment reviewed by the courts." As previously stated, the aggrieved party has sixty days from the entry of the final judgment to file a petition of certiorari in the chancery court. Tenn. Code. Ann. § 27-9-102. The question, here, is which Commission decision constitutes a "final order or judgment" from which Petitioners have sixty days to appeal. Metro argues that it is the Commission's March 24 decision approving the master development plan, and Petitioners argue that it is the Commission's October 13 decision approving the final site plan. We agree with Metro.

A planned unit development district ("PUD") "is an alternative zoning process that allows for the development of land in a well-planned and coordinated manner, providing opportunities for more efficient utilization of land than would otherwise be permitted by…conventional zoning provisions." M.C.L. § 17.36.030. A PUD can be applied over an existing zoning district, but the regulations within a PUD are set by the master development plan. M.C.L § 17.36.040. The master development plan is a "development concept of all land areas encompassed by a PUD district." *Id.* Our courts recognize "that a PUD district overlay is a type of 'zoning,' and that the preliminary master plan that forms the basis for the approval of a PUD constitutes a set of legally enforceable development restrictions." *Barry Const. Co.*, 240 S.W.3d at 851 (internal citations omitted).

A final site plan consists "of a detailed set of construction plans" that must demonstrate compliance with the general development concept of the master development plan. M.C.L. § 17.36.040. A final site plan is approved if it comports with the master development plan. M.C.L. § 17.40.170. Accordingly, this court has previously held that approval of the final site plan is a ministerial act:

> The determination of whether the Green Hills [final site] plan complied with [the standards of the base zoning as modified by the Green Hills Urban Design Overlay] did not call for the adoption of a new zoning regulation or an amendment to the existing zoning laws, which would have constituted legislative action. Neither does the rule give the Executive

Director discretion in making such a determination; rather, the rule only allows him/her to review the plan to see whether it complies with the [Shopping Center Regional] zoning regulations and the Green Hills [Urban Design Overlay].

*Green Hills Neighborhood Ass'n v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2014-01590-COA-R3-CV, 2015 WL 2393977, at *4 (Tenn. Ct. App. May 18, 2015).

In this case, the Forest View PUD was adopted by the Metropolitan Council in 1985. On March 24, 2016, The Ridge presented a master development plan that also constituted a revision to the Forest View PUD. The 2016 revision decreased the number of multi-family residential units that could be built on the property from 212 to 96. The Commission found that the revised plan was "consistent with the overall concept of the Council approved plan, and [was] consistent with zoning requirements." It approved the revised master development plan with the following conditions:

1. This approval does not include any signs. Signs in planned unit developments must be approved by the Metro Department of Codes Administration except in specific instances when the Metro Council directs the Metro Planning Commission to review such signs.
2. The requirements of the Metro Fire Marshal's Office for emergency vehicle access and adequate water supply for fire protection must be met prior to the issuance of any building permits.
3. If the PUD final site plan or final plat indicates that there is less acreage than what is shown on the approved preliminary plan, the final site plan shall be appropriately adjusted to show the actual total acreage, which may require that the total number of dwelling units or total floor area be reduced.
4. Prior to or with any additional development applications for this property, the applicant shall provide the Planning Department with a corrected copy of the preliminary PUD plan.

The Commission entered the minutes for the March 24 decision on April 14, 2016.

After The Ridge submitted construction and engineering drawings later in 2016, providing specifications of what would be built, Metro's planning director submitted a report to the Commission certifying that they matched the master development plan. The Commission approved the final site plan on October 13, 2016.

Petitioners primarily argue that the Commission did not approve a master development plan on March 24, 2016, because the Commission placed conditions on its

approval.[4] We disagree. The conditions concerned matters outside of the plan itself; the Commission did not require the Developer to correct or change the proposed master development plan. Therefore, the Commission approved a master development plan on March 24.

The Commission's approval of the master development plan on March 24, 2016, created legally binding, enforceable restrictions within the Forrest View PUD, and thus, it constituted the Commission's final judgment or order. As to the final site plan approval on October 13, the Developer was entitled to the Commission's approval as long as the final site plan complied with the master development plan. In other words, the October 13 decision was not discretionary. Accordingly, the clock for challenging the Commission's decision started to run on April 14, 2016, when the Commission entered the minutes for the March 24 decision. Petitioners filed their writ of certiorari on December 27, 2016, which fell outside the sixty-day deadline. As a consequence, the trial court did not have subject matter jurisdiction to review the decision. *See Save Rural Franklin v. Williamson Cty. Gov't*, No. M2014-02568-COA-R3-CV, 2016 WL 4523418, at *6 (Tenn. Ct. App. Aug. 26, 2016); *Talley*, 358 S.W.3d at 192; *Cawood*, 330 S.W.3d at 609; *Blair*, 246 S.W.3d at 40-41.

For the foregoing reasons, the trial court correctly determined that the sixty-day period for appeal of the site plan had lapsed. Accordingly, the trial court correctly decided it did not have jurisdiction to review the October 13, 2016 decision.

### IN CONCLUSION

The judgment of the trial court is affirmed and costs of appeal are assessed against Petitioners, jointly and severally.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[4] Though Petitioners argue that the March 24 decision was not appealable, we note that Petitioners did appeal that decision through a writ of certiorari filed on May 16, 2016. *See Metz*, 2017 WL 4677248, at *1.